**Joseph DiNAPOLI, Petitioner,**

v.

**The UNITED STATES PAROLE COMMISSION and Joseph Petrovsky, Warden, Respondents.**

**Civ. No. 81–0160.**

United States District Court, M. D. Pennsylvania.

April 21, 1982.

Robert L. Ellis, New York City, for petitioner.

Fred Martin, Asst. U.S. Atty., Lewisburg, Pa., David C. Jones, Asst. U.S. Atty., Harrisburg, Pa., for respondents.

## OPINION

MUIR, District Judge.

### I.  Introduction.

#### A.  Procedural History.

Petitioner Joseph DiNapoli filed this action requesting a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 3, 1981.  Following referral of the matter to United States Magistrate John Havas, respondents filed an answer to the petition on February 24, 1981, to which DiNapoli replied on March 9, 1981.  Respondents filed a sur-reply brief on March 20, 1981.  On March 31, 1981, the Magistrate issued his report recommending that DiNapoli be granted habeas corpus relief.  Respondents filed exceptions to the Magistrate's report

on April 13, 1981 and on April 20, 1981, DiNapoli filed a response to those exceptions. On May 8, 1981, this Court issued an opinion denying DiNapoli's petition for a writ of habeas corpus. The basis for the Court's decision was that, as a result of the Parole Commission's action in reopening DiNapoli's file and scheduling a new parole hearing for April 1981, the posture of the case warranted imposition upon DiNapoli of the requirement that he exhaust his newly available administrative remedies with respect to any decision rendered by the Parole Commission upon the April 1981 hearing.

DiNapoli filed a Notice of Appeal to the Third Circuit Court of Appeals from this Court's order of May 8, 1981 denying DiNapoli's petition. On January 4, 1982, the Court of Appeals issued a per curiam opinion concluding that while this Court did not err in requiring DiNapoli to exhaust his administrative remedies, all administrative proceedings now have been concluded. Accordingly, DiNapoli's case was remanded to this Court for consideration of the merits of DiNapoli's petition. *DiNapoli v. United States Parole Commission et al.*, 676 F.2d 684, No. 81–2061, slip op. (3d Cir. January 4, 1982).

On January 27, 1982, the Respondents filed a return and answer to DiNapoli's petition for a writ of habeas corpus and a brief in opposition to the petition. On January 29, 1982, the Respondents filed documents in support of their brief opposing the petition. On February 25, 1982, DiNapoli filed a traverse to the Respondents' brief in opposition to the petition. On March 31, 1982, United States Magistrate John Havas filed a report recommending that DiNapoli's petition for a writ of habeas corpus be granted. On April 9, 1982, the Respondents filed exceptions to the Magistrate's report and a memorandum of law in support thereof. The matter is now ripe for disposition by this Court.

### B. Relevant Facts.

The relevant facts are not in dispute. DiNapoli is presently serving an aggregate sentence of 21 years and four months imposed upon him by the Federal District Court for the Southern District of New York on January 4, 1973 and May 7, 1974 as a result of his convictions of one count of income tax evasion, one count of extortion conspiracy and single counts each of conspiring to sell and selling heroin. DiNapoli became eligible for parole consideration in February of 1980. It is uncontradicted that DiNapoli has a very good institutional adjustment record.

In accordance with applicable regulations, DiNapoli was scheduled and appeared for his initial parole hearing on December 4, 1979. However, on that date, parole examiners determined that DiNapoli's file lacked sufficient information upon which the examiners' decision could be made. Specifically, the examiners noted that the record was devoid of any information concerning the income tax evasion conviction and that there were few details concerning the narcotics offense. DiNapoli and his attorney were advised by the Parole Commission examiners that more information was needed before a parole determination could be reached. The initial hearing was postponed.

Efforts were then undertaken by a Parole Commission case analyst to obtain the necessary information from the United States Probation Office for the Southern District of New York. In a reply by that office dated January 31, 1980, the probation authorities basically advised the Parole Commission that no further information concerning the offenses in which the Commission was interested was available. The United States Attorney's Office advised the Probation Office that it had no definitive information in its files as to the quantity, quality, or street value of the heroin involved and that the Court had ordered no pre-sentence report on the income tax evasion charge. The United States Attorney's Office indicated that its file draft of the indictment on the income tax evasion charge was incomplete.

On February 7, 1980, the Parole Commission examiners conducted a parole hearing for DiNapoli at the United States Peniten-

tiary at Lewisburg, Pennsylvania. Based on information in the possession of the Parole Commission at that time, DiNapoli was found to have a salient factor score of 11 and an offense severity rating of "Greatest I." It was recommended that DiNapoli be paroled after service of 90 months imprisonment. DiNapoli's case was referred to an administrative hearing examiner for the Regional Office of the Parole Commission for review pursuant to 28 C.F.R. § 2.23(c). Acting Administrative Hearing Examiner Tenney determined that there was insufficient information in the file to make a meaningful decision and recommended that the Parole Commission continue its efforts to get the required information. On February 15, 1980, DiNapoli's case was reviewed by Joseph A. Nardoza, Regional Commissioner for the Parole Commission and Nardoza concurred in Tenney's conclusion.

Accordingly, on February 19, 1980, a case analyst was directed to contact the Probation Office and to advise DiNapoli that there would be a delay in processing his case. In the following weeks, the Parole Commission made at least two efforts to obtain the necessary information from the Probation Office by telephone without result, and on April 22, 1980, Nardoza met with the Administrative Hearing Examiner and regional counsel to determine a course of action. Plans were made to contact the United States Attorney's Office for the Southern District of New York and Regional Counsel subsequently made telephone calls to the United States Attorney as well as to the Probation Office for the Southern District of New York. Finally, the Parole Commission was referred to an opinion of the Second Circuit Court of Appeals affirming DiNapoli's conviction and further information concerning DiNapoli's narcotics conviction was derived therefrom. *See United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975). On May 5, 1980, the Parole Commission received a letter from the Probation Office stating that it had finally obtained a copy of DiNapoli's indictment on the income tax evasion charge. At that time Nardoza determined that all the information relevant to DiNapoli's case had been obtained by the Parole Commission. Thus, DiNapoli's case was set down for a new initial parole hearing.

On May 7, 1980, a memorandum was sent to the United States Penitentiary at Lewisburg indicating that DiNapoli's case should be placed on the June 1980 parole hearing docket. 28 C.F.R. § 2.28(a) was cited as authority for reopening DiNapoli's case for a new initial hearing. However, that citation was in error and according to Nardoza, the proper authority for the action taken is found at 28 C.F.R. § 2.55(f) because no earlier decision had been finalized.

On June 12, 1980, DiNapoli was afforded a new initial hearing. The examiner panel recommended that DiNapoli be considered for a presumptive parole after service of 97 months of incarceration. On June 25, 1980, Nardoza reviewed DiNapoli's case and determined that it fit the criteria of "original jurisdiction designation" found at 28 C.F.R. § 2.17(b)(2). Nardoza disagreed with the Parole Commission examiner panel and determined that DiNapoli's incarceration should be continued until the expiration of his term. Pursuant to 28 C.F.R. § 2.17, Nardoza referred DiNapoli's case to the National Commissioners for a decision. By notice of action dated July 16, 1980, the National Commissioners voted to deny DiNapoli's parole application on the basis that parole would depreciate the seriousness of his offense behavior and jeopardize the public welfare. DiNapoli then filed an appeal to the full National Commission under 28 C.F.R. § 2.27 and on October 28, 1980, the National Commission affirmed the previous decision. DiNapoli was advised of this affirmance by a Notice of Action dated October 28, 1980.

Upon receipt of the present petition for a writ of habeas corpus filed by DiNapoli on February 3, 1981, Regional Counsel for the Parole Commission realized that disclosure of reliance by the Parole Commission on the decision rendered by the Second Circuit Court of Appeals affirming DiNapoli's conviction had not been made to DiNapoli prior to his June 1980 parole hearing. Accordingly, on February 20, 1981, Nardoza or-

dered that DiNapoli's case be reopened pursuant to 28 C.F.R. § 2.28(a) and that a special reconsideration hearing be scheduled for the April 1981 docket. As a result of the April 1981 parole hearing, on April 7, 1981, the full National Commission reversed its prior determination (which had denied DiNapoli any parole) and set December 20, 1982 as the date of DiNapoli's presumptive parole.

In remanding this matter back to this Court, the Court of Appeals noted that DiNapoli raised two issues which it could not resolve on appeal. First, DiNapoli claims that he was wrongfully denied parole "by reason of an erroneous and arbitrary offense severity rating of 'greatest II' " and second, that the "greatest II" classification "violated the *ex post facto* provision of the United States Constitution." *DiNapoli,* 676 F.2d 684, No. 81–2061 slip op. at 11. In his report and recommendation of March 31, 1982, the Magistrate did not address in detail the *ex post facto* issue. However, the Magistrate concluded that the Parole Commission's designation of DiNapoli's offense severity as "Greatest II" is an arbitrary and capricious act of the Parole Commission.

## II. Review of the Parole Commission's Actions.

### A. DiNapoli's "Greatest II" Offense Severity Rating.

In order for this Court to overturn the Parole Commission's determination that DiNapoli's offense severity rating should be "Greatest II", this Court must determine that there was no rational basis in the record for the Parole Commission's conclusion. *Zannino v. Arnold,* 531 F.2d 687 (3d Cir. 1976). The reasoning of the Parole Commission in determining that DiNapoli's offense severity rating should be "Greatest II" is stated in the Parole Commission's July 16, 1980 Notice of Action. The Notice of Action explains as follows:

> Your offense behavior has been rated as Greatest II severity because it involved income tax evasion, extortion where a person was beaten and violation of narcotics laws where you had a managerial interest in a conspiracy that involved multi-kilogram quantities of heroin... It is noted that you committed perjury while a federal prisoner; your diversified criminal activities and your association with organized figures evince a pattern of disrespect for the law. You were arrested with a suitcase containing over $967,000. This evidence was presented in your narcotics trial, and your defense was that the money was derived from your illegal loansharking situation. This is an aggravating factor of your offense behavior and indicates that you were deeply involved in a criminal enterprise of enormous magnitude. Parole would depreciate the seriousness of your offense behavior and might jeopardize the public welfare.

### 1. DiNapoli's Drug-Related Offenses.

Parole Commission offense severity categorization guidelines provide that an individual having a managerial or proprietary interest in a multi-kilogram drug conspiracy should be given a "Greatest I" severity rating. DiNapoli claims that he did not have a managerial or proprietary role in the drug conspiracy, Petition ¶ 21(A), and that there was insufficient evidence as to the quantity of drugs involved in the conspiracy. The Magistrate, in his report, adopts DiNapoli's position that there was no rational evidentiary basis for the Parole Commission's rating of "Greatest I" for DiNapoli's drug offenses. "The Commission vaguely alludes to Petitioner's 'managerial interest' in the subject drug conspiracy and the fact that 'multi-kilogram quantities of heroin' were involved. It is apparent, however, that the Commission assigned the Greatest I severity rating to Petitioner's drug offense without knowing the exact quantity or the street value and purity of the drugs involved." Magistrate's report at p. 6.

A managerial or proprietary interest in a "very large scale drug case" is defined to include offenders who "sell or negotiate to sell such drugs, or who have decision-making authority concerning the distribution/sale, importation, cutting, or manufac-

ture of such drugs; or who finance such operations. Cases to be excluded are peripherally involved offenders without any decision-making authority (e.g. a person hired merely as a courier). 28 C.F.R. § 2.20 Definition "E".

In its opinion relating to DiNapoli's appeal from his drug conspiracy conviction, the Court of Appeals for the Second Circuit considered DiNapoli, along with another defendant, Pugliese, to be the head of one of two branches of an overall drug conspiracy. *United States v. Tramunti*, 513 F.2d 1087, 1106 (2d Cir. 1975). In reaching its conclusion the Court of Appeals relied on the following facts. (1) In June of 1971, Pugliese delivered to DiNapoli $8,000 to $10,000. 513 F.2d at 1108. While DiNapoli argues that this money could have been loan sharking money and not narcotics proceeds, the Court of Appeals concluded that one could reasonably infer from the circumstances of the delivery of the money that it was from narcotics. Further, one could infer from DiNapoli's failure to count the money that Pugliese was an underling and that DiNapoli was the "boss" of the operation. 513 F.2d at 1108. (2) When Pugliese was put in jail, DiNapoli ascended to the position of becoming the contact with the other branch of the drug conspiracy. (3) DiNapoli placed many drug orders with the "boss" of the other branch of the drug conspiracy. (4) DiNapoli sold a kilogram of heroin for $22,-000 in December of 1971. (5) On February 3, 1972, DiNapoli possessed a suitcase containing $967,000. 513 F.2d 1096–98, 1108–09. Based on these factual findings and the numerous references to DiNapoli in the Court of Appeals' opinion in *Tramunti*, 513 F.2d 1087, a rational basis existed for the Parole Commission's conclusion that DiNapoli had a "managerial interest" in the drug conspiracy.

In order to justify a "Greatest I" rating, the drug conspiracy must be on a "very large scale (e.g. offense involving more than 50 grams of 100% pure heroin, *or equivalent* amount)". 28 C.F.R. § 2.20 (emphasis added). "Equivalent amounts" of heroin "may be computed as follows: one gram of 100% pure is equivalent to two

grams of 50% pure and 10 grams of 10% pure, etc." 28 C.F.R. § 2.20, Definition "C". While conceding that there is no precise information either in the Court of Appeals' opinion in *Tramunti* or in the various reports prepared for the Parole Commission as to the purity or amount of drugs involved, the respondents assert that there exists a rational basis for concluding that DiNapoli was involved in a "very large scale" offense. First, the respondents point to DiNapoli's concession in his petition that the entire drug conspiracy involved "multiple kilograms" of drugs. Petition, ¶¶ 33, 34. Second, the Court of Appeals refers to the indictment which mentioned substantial amounts of heroin: "30 bags of heroin"; "one-half ounce of heroin"; "one ounce quantities of heroin"; "one-half kilogram of heroin"; "three-quarter kilogram quantities of heroin"; "one ounce of heroin"; "one-eighth kilogram of heroin"; "one-eighth kilogram of heroin"; "one-half kilogram of heroin"; "one-half kilogram of heroin"; "one-eighth kilogram of heroin"; "one-half kilogram of heroin"; "two kilograms of heroin"; "three kilograms of heroin"; "three kilogram quantities of heroin"; "one-quarter kilogram of heroin"; "one-quarter kilogram of heroin"; "three kilograms of heroin"; "767 grams of heroin". *Tramunti*, 513 F.2d 1087, 1093–94.

■ DiNapoli seeks to separate himself from these vast quantities of drugs, stating that his involvement was "by the Government's bill of particulars and the trial evidence a single kilogram which sold for $22,-000 and for which DiNapoli received $1,000." Petition, ¶ 34. However, DiNapoli was convicted of involvement in a drug *conspiracy* and therefore cannot separate himself from all of the drugs alluded to in the indictment. *E.g. Beltz Travel Service v. Int'l. Air Transport Ass'n.*, 620 F.2d 1360 (9th Cir. 1980). *Cf. United States v. Shaffer*, 520 F.2d 1369 (3d Cir. 1975).

■ There is no direct information as to the purity of the heroin involved in the drug conspiracy. However, conservatively estimating the amount of heroin referred to

in the drug conspiracy indictment, the Court concludes that at least 15,000 grams or 33.07 pounds were involved. Thus, the purity of the heroin involved need only have been one-third of 1% for there to be an *equivalent* of 50 grams of 100% pure heroin. Given the street value of the heroin, (*e.g.* $22,000 per kilogram, *Tramunti*, 513 F.2d at 1095, 1096, 1098), the Parole Commission could reasonably have assumed that the heroin was at least 0.333% pure. Considering also that the drug conspiracy ran for four years and that DiNapoli was apprehended with a suitcase containing $976,-000 in cash, the Parole Commission could reasonably conclude that the drug conspiracy was on a "very large scale." For these reasons, this Court will not disturb the Parole Commission's conclusion that the offense severity rating of DiNapoli's drug conspiracy offense was "Greatest I."

### 2. DiNapoli's Extortion Conspiracy Offense.

In his Report, the Magistrate also finds error in the Parole Commission's rating of DiNapoli's extortion conspiracy offense as "Greatest I." The reasoning of the Parole Commission with respect to the extortion conspiracy offense is expressed in the affidavit of Linda Marble, Chief Case Analyst for the National Appeals Board of the Parole Commission,

> ... DiNapoli was involved in an extortion in which violence was used. Since extortion involving *threat* of physical harm would be rated in the Very High Category, the Commissioners determined this offense will be rated "Greatest I." The Commissioners also noted that this extortion offense was aggravated by the fact that DiNapoli was convicted of evading income taxes on income received from [the] offense.

The Magistrate concludes first that DiNapoli's one-year tax evasion sentence had expired prior to the Parole Commission's consideration of DiNapoli's extortion conviction so that the Parole Commission should not have considered the tax evasion conviction to be an "aggravating factor"

with respect to the extortion conviction. Magistrate's Report at p. 5. The Magistrate further concludes that since there was no specific evidence that there was violence involved in DiNapoli's extortion conviction, the Parole Commission should have rated DiNapoli's extortion conviction only as "Very High." Magistrate's report at p. 6.

■ Despite the Magistrate's conclusion to the contrary, there existed sufficient evidence of violence with respect to DiNapoli's extortion conviction to justify a "Greatest I" severity rating. With respect to the extortion scheme, the following comments are made in the Hearing Summary of DiNapoli's June 12, 1980 parole hearing.

> The extortion offense involves extortionate extensions of credit during the period of from December of 1968 through September of 1972. This conspiracy included an incident in June of 1970 when a person who had been loaned $1,000.00 by DiNapoli was struck about the face and body by DiNapoli after the person had become deficient in his loan payments. DiNapoli admits he was involved in shy-locking (sic) activities but he denies striking the victim or being involved in any violence. Exhibit G to Response of Parole Commission dated 2/24/81 at p. 1.

DiNapoli's refutation of the allegation of violence is not a basis for the Parole Commission to disregard this evidence. *E.g. Williams v. New York*, 337 U.S. 241, 246–51, 69 S.Ct. 1079, 1082–85, 93 L.Ed. 1337 (1949); *Zannino v. Arnold*, 531 F.2d 687, 692 (3d Cir. 1976). Since this information in the Parole Commission's hearing summary is sufficient to create a rational basis for the Parole Commission's rating of DiNapoli's extortion offense as "Greatest I," the Court need not address the propriety of the Parole Commission's action in considering DiNapoli's tax evasion conviction as an aggravating factor with respect to DiNapoli's extortion conviction.

### 3. Propriety of Considering DiNapoli's Earlier Offenses.

The Respondents assert that by combining DiNapoli's two "Greatest I" offense

severity ratings DiNapoli's final offense severity rating should be "Greatest II."

In his report, the Magistrate concludes that the Parole Commission erred in considering DiNapoli's income tax evasion and extortion offenses in computing DiNapoli's offense severity rating. In reaching that conclusion, the Magistrate follows this Court's decision in *Silberberg v. United States Parole Commission*, 483 F.Supp. 1280 (M.D.Pa.1980). In *Silberberg*, this Court concluded that based upon the expiration of the petitioner's sentences and upon the manner in which the Parole Commission's regulations treated those sentences, expired sentences could only be utilized to determine risk of further anti-social behavior (salient factor score) and not to determine the severity of an individual's offense.

On October 13, 1972, DiNapoli pled guilty in the United States District Court for the Southern District of New York to one count of conspiracy to make extortionate extensions of credit. On January 4, 1973, DiNapoli was sentenced to a three-year term of imprisonment on his conviction. On that same date, January 4, 1973, DiNapoli pled guilty to one count of income tax evasion. DiNapoli was sentenced to a one-year concurrent term of imprisonment for that offense. On March 13, 1974, DiNapoli was found guilty in the United States District Court for the Southern District of New York of one count of conspiracy to violate federal narcotics laws and one count of distribution and possession with intent to distribute heroin. On May 7, 1974, DiNapoli was sentenced to a 15-year term of imprisonment on the conspiracy conviction and a five-year term of imprisonment on the distribution of heroin conviction. The sentencing judge ordered that this aggregated 20-year term run concurrently with the sentences that DiNapoli was serving for tax evasion and extortion conspiracy. Nardoza Affidavit at pp. 1–2. On February 7, 1980, DiNapoli was afforded his first substantive initial parole hearing at the United States Penitentiary at Lewisburg, Pennsylvania.

There is no doubt that by the time of DiNapoli's initial parole hearing, both the tax evasion and extortion conspiracy convictions had expired. Indeed, both had expired more than four years earlier, by January 3, 1976. Thus, applying the rule of *Silberberg* that "once a prisoner has served his term of incarceration, the Commission may not consider that crime in determining offense severity for another crime," 483 F.Supp. at 1283, the Parole Commission erred in considering DiNapoli's tax evasion and extortion conspiracy convictions and determining that DiNapoli's offense severity rating was "Greatest II".

It is the position of the Respondents that the rule of *Silberberg* should not be applied in this case. The respondents argue that (1) DiNapoli's case is factually distinguishable from *Silberberg*; (2) there are sound reasons based on parole statutory framework for considering all of DiNapoli's offenses; (3) there are serious problems raised particularly with respect to this case in applying the *Silberberg* doctrine; and (4) the Parole Commission's regulations permit all of Silberberg's offenses to be considered in determining his offense severity rating.

The Respondents' attempt factually to distinguish *Silberberg* from this case is unpersuasive. The Respondents first claim that DiNapoli's situation is different from that in *Silberberg* because all of DiNapoli's offenses occurred contemporaneously while the offenses in *Silberberg* were not contemporaneous. Second, the Respondents claim that, unlike the case in *Silberberg*, DiNapoli did not receive an initial parole hearing prior to the expiration of the earlier offenses. The Respondents have not demonstrated that the fact that DiNapoli's offenses may have been "contemporaneous" justifies distinction from *Silberberg*. Furthermore, DiNapoli was found guilty of the extortion conspiracy offense in October 1972 and of the tax evasion offense in January 1973, while DiNapoli was found guilty of the drug conspiracy and drug distribution offenses in March 1974. Certainly, while DiNapoli's acts may have been contemporaneous, the convictions were not contemporaneous. In addition, any distinction

based upon the fact that in *Silberberg*, the petitioner received an initial parole hearing on a sentence which later expired while DiNapoli did not receive such an initial parole hearing on any of the sentences until after the earlier sentences expired is frivolous. The failure of the Parole Commission to give DiNapoli a parole hearing prior to December of 1979 may well be its own fault. Indeed, when DiNapoli's tax evasion conviction expired on January 3, 1974, DiNapoli might have been entitled to an initial parole hearing. The failure of the Parole Commission to give DiNapoli such a hearing at that time appears to have been an "oversight" on the part of the Parole Commission. Exhibit B to DiNapoli's Reply Brief of February 25, 1982. The Respondents cannot now rely on their own omission to distinguish *Silberberg*.

The Respondents further argue that since all of DiNapoli's offenses are treated as one for release purposes, *e.g. McCray v. United States Board of Parole*, 542 F.2d 558 (10th Cir. 1976); 18 U.S.C. § 4205(a) ("Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms..."), all of the circumstances of DiNapoli's offenses must be considered by the Parole Commission in determining whether release on parole is appropriate. *E.g. United States ex rel. Goldberg v. Warden*, 622 F.2d 60 (3d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980). This proposed distinction from *Silberberg* disregards the recognition by this Court in *Silberberg* that all prior offenses may be *considered* by the Parole Commission at least in determining the salient factor score. In *Silberberg*, this Court was concerned with the Parole Commission's practice of penalizing a parole applicant twice for his prior convictions: once in determining the salient factor score and a second time in determining the offense severity rating. Applying then existing Parole Commission guidelines, the Court determined that only "the salient factor score provides for the consideration of past convictions" 483 F.Supp. at 1282. *See also McCrimmon v. United States Pa-*

*role Commission*, No. 78–456 slip op. (M.D.Pa. February 27, 1979).

The Respondents apparently recognize that if they follow the rule of *Silberberg* and apply their own regulations (*e.g.* 28 C.F.R. § 2.20), DiNapoli may have to be released. The only offenses for which DiNapoli is presently incarcerated are his drug-related conspiracy and distribution of heroin offenses. As previously stated, the offense severity for those offenses is "Greatest I." Depending on the offender's salient factor score, the offender would have to be released after between 40 months (minimum for "very good" salient factor score) and 100 months (maximum for "poor" salient factor score). In computing DiNapoli's salient factor score, Items "A" and "B" relate to prior convictions and commitments. Even if DiNapoli received scores of "zero" on both items "A" and "B", DiNapoli's salient factor score would be in the "good" range. Thus, pursuant to the regulations, DiNapoli's guidelines would dictate his release after between 52 and 64 months of incarceration. 28 C.F.R. § 2.20. At the time DiNapoli's petition for a writ of habeas corpus was filed, he had been incarcerated approximately 100 months and DiNapoli has now served in excess of 113 months.

Recognizing that the applicable regulations would require DiNapoli's release pursuant to the rule of *Silberberg*, the Respondents finally argue that the Parole Commission's regulations have been amended to modify this Court's holding in *Silberberg*. In particular, the Parole Commission has submitted the Affidavit of Steve D. Johnston and the Parole Commission's amended regulations, found at 45 Fed. Reg. 44924–44925 (July 2, 1980). The Parole Commission's new regulations adopt the positions set forth in the cases of *Walker v. Taylor*, 338 F.2d 945 (10th Cir. 1964) and *Smaldone v. United States*, 458 F.Supp. 1000 (D.Kan. 1978). *See* 45 Fed.Reg. 44925. Under the Parole Commission's new regulations, an offender's prior offenses for which he is currently confined will be considered only in computing the offense severity rating and

not the salient factor score. The regulations state as to sentence aggregation:

When multiple sentences are aggregated by the Bureau of Prisons pursuant to 18 U.S.C. §§ 4161 and 4205, such sentences are treated as a single aggregate sentence for the purpose of every action taken by the [Parole Commission] pursuant to its rules, and the prisoner has a single parole eligibility date as determined by the Bureau of Prisons.

Most important is the addition of "General Note E" which states

In cases where multiple sentences have been imposed (whether consecutive or concurrent and whether aggregated or not) an offense severity rating shall be established to reflect the overall severity of the underlying criminal behavior. This rating shall apply whether or not any of the component sentences has expired.

The effective date of these new regulations for the Parole Commission is August 1, 1980.

The Court notes that its opinion in *Silberberg* which rejected the rationale of *Walker*, 338 F.2d 945 and *Smaldone*, 458 F.Supp. 1000 was dated February 4, 1980 prior to the effective date of the new Parole Commission regulations. In addition, DiNapoli's incarceration began on January 4, 1973. Further, DiNapoli's parole application was first considered by the Parole Commission on December 12, 1979 and DiNapoli received his first full parole hearing in February 1980. Finally, all of the criminal activity in which DiNapoli was engaged took place prior to 1974. All of these events quite obviously took place before the effective date of the Parole Commission's revised regulations.

■ Due deference must be given to the Parole Commission's regulations, *Red Lion Broadcasting Co., Inc. v. Federal Communications Commission, et al.*, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), and an agency's interpretation of its own regulations will be upheld absent compelling indications that it is wrong, *Lucas Coal Company v. Interior Board of Mine Opera-*

*tions Appeals*, 522 F.2d 581 (3d Cir. 1975). Nonetheless, it is the view of this Court that today to apply the Parole Commission's revised regulations interpreting 28 C.F.R. § 2.20 would constitute a violation of the *ex post facto* clause.

■ The correct focus of an *ex post facto* analysis is an examination of the law in effect at the time the criminal offense is committed. *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 964–68, 67 L.Ed.2d 17 (1981); *Dobbert v. Florida*, 432 U.S. 282, 292, 97 S.Ct. 2290, 2297, 53 L.Ed.2d 344 (1977). In *Weaver*, the Court noted

Two critical elements must be present for a criminal or penal law to be *ex post facto* : It must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. . . . The critical question is whether the law changes the legal consequences of acts completed before its effective date. 101 S.Ct. at 964–65.

It is the view of this Court that the state of the law prior to the Parole Commission's amendment of its regulations was set forth in this Court's opinion in *Silberberg*. For the Court now to apply the Parole Commission's regulations which went into effect on August 1, 1980, and subsequent to *all* of the relevant factual events in this case would constitute a violation of the *ex post facto* clause.

For the reasons stated above, the rule of *Silberberg* is applicable to DiNapoli's petition for a writ of habeas corpus. Applying that rule, the Parole Commission erred in considering DiNapoli's prior offenses of tax evasion and extortion conspiracy in computing DiNapoli's offense severity rating. These actions by the Parole Commission constituted arbitrary and capricious actions.

4. Combining Two "Greatest I" Offenses to Get a "Greatest II" Severity Rating.

■ Finally, the Court notes that even if the rule of *Silberberg* were not applicable in this case, the Parole Commission's action

in attempting to combine two "Greatest I" offenses in order to conclude with a "Greatest II" offense constituted an arbitrary and capricious act by the Parole Commission. In attempting so to combine two "Greatest I" offenses, the Parole Commission relied on "General Note D" to 28 C.F.R. § 2.20 which states that "if an offense behavior involved multiple separate offenses, the severity level may be increased." On its face, that rule would appear to deal with a situation where an inmate is under sentence for separate multiple offenses at the time of the parole hearing. That provision appears not to apply to DiNapoli's situation where the sentences for his earlier offenses have expired.

Furthermore, the Parole Commission's guidelines seriously undercut any argument that a "Greatest II" offense severity rating is justified in this case. That rating is applicable to crimes such as murder, aggravated felonies involving serious injuries, aircraft hijacking, espionage, kidnapping for ransom, terrorism, and treason. 28 C.F.R. § 2.20.

Finally, even assuming DiNapoli's salient factor score would only be in the "Good" range, DiNapoli's presumptive release date for his "Greatest I" drug related offenses would be after from 52 to 64 months of imprisonment. Presently, DiNapoli has served almost 50 months more than the *upper limit* of release for his drug-related offenses. The Parole Commission's basis for incarcerating DiNapoli for this length of time is that the Commission could add to the length of incarceration for the drug-related offenses in consideration of DiNapoli's extortion conspiracy and tax evasion offenses. The additional length of time added for DiNapoli's tax evasion and extortion conspiracy offenses is excessive. First, the sentencing judges indicated that DiNapoli's tax evasion and extortion conspiracy sentences should run *concurrently* with DiNapoli's drug offense sentence. Second, on January 4, 1973, DiNapoli was sentenced to one year for his tax evasion conviction and three years for his extortion conspiracy conviction. The sentencing judge in this case ordered that these two sentences be served *concurrently*. DiNapoli's maximum incarceration for his tax evasion and extortion conspiracy offenses was three years or 36 months. For the Parole Commission to add to DiNapoli's 52 to 64 month period of incarceration for his drug-related offenses ("Greatest I" severity rating, "Good" salient factor score) a term in excess of 36 months is arbitrary and capricious. Indeed, this action by the Parole Commission indicates only that the Parole Commission's intent was to keep DiNapoli incarcerated for the maximum amount of time, whether lawful or not, and in complete disregard not only of its own regulations but the directions of the sentencing judges in these cases.

### III. Conclusion.

In conclusion, the Court finds that the Parole Commission has acted in an arbitrary and capricious manner with respect to DiNapoli's parole application. First, the Parole Commission's action in considering DiNapoli's expired sentences for extortion conspiracy and tax evasion constitutes an arbitrary and capricious act. Second, the Parole Commission's action in incarcerating DiNapoli under a "Greatest II" status is an arbitrary and capricious act.

The Court doubts seriously that the Parole Commission could in good faith justify further incarcerating DiNapoli. Indeed, the Court envisions DiNapoli's prompt release. Nonetheless, there is abundant support for the proposition that where the Parole Commission has engaged in an arbitrary or capricious action, the matter should be remanded to the Parole Commission with appropriate instructions for further consideration of the prisoner's case for release. 18 U.S.C. § 4203 (power to grant parole vested solely in the sound discretion of the Parole Commission); *Billiteri v. United States Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976); *United States v. Frederick*, 405 F.2d 129 (3d Cir. 1968). *Silberberg*, 483 F.Supp. at 1283. Given the degree to which the Parole Commission has engaged in arbitrary and capricious actions with respect to DiNapoli's parole application, this Court will order DiNapoli's release from incarceration unless the Parole Commission holds a new parole hearing for DiNapoli within 30

days from the date of this order. At that hearing, the Parole Commission shall take all actions necessary consistent with this Opinion and Order. If the Parole Commission further detains DiNapoli in a manner which this Court deems to be arbitrary and capricious, the Court will not hesitate to issue a writ of habeas corpus.

An appropriate order will be entered.

### ORDER

1. The Parole Commission has engaged in an arbitrary and capricious action with respect to DiNapoli's application for parole.

2. The Parole Commission shall hold a new parole hearing for DiNapoli or shall review DiNapoli's record within 30 days of the date of this order.

3. Within 15 days after DiNapoli's new parole hearing or the review of DiNapoli's record, the Parole Commission shall file a statement setting forth in detail its actions taken.

4. Failure of the Parole Commission to hold such a parole hearing or to review DiNapoli's record within the time provided will result in an order by this Court directing DiNapoli's release from incarceration.