**Thomas M. ROTH, Petitioner-Appellee,**

v.

**UNITED STATES PAROLE COMMISSION, Respondents-Appellant.**

**No. 83–1989.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1983.

Decided Jan. 26, 1984.

Madeleine Caughey Austin, Denver, Colo., for petitioner-appellee.

John S. Leonardo, Asst. U.S. Atty., Phoenix, Ariz., for respondents-appellants.

Before HUG, PREGERSON and NORRIS, Circuit Judges.

PREGERSON, Circuit Judge:

The United States Parole Commission (Commission) appeals from a decision of the United States District Court for the District of Arizona granting Thomas M. Roth's petition for habeas corpus under 28 U.S.C. § 2241 (1976). Pursuant to the district court's order, the warden of Safford Federal Prison in Arizona released Roth after he had served about 46 months of a combined 8-year sentence for committing two mail-fraud-related crimes. Roth remains free on parole pending the outcome of this appeal.

In ordering Roth's release, the district court adopted the magistrate's report and recommendation. The court found that the Commission had violated the Constitution's ex post facto clause. The court reasoned that the Commission, by applying its new guidelines for computing parole release dates, had improperly decided to make Roth serve more time in prison to earn parole than he would have served under the old guidelines.

Because Parole Commission guidelines are not "laws" within the meaning of the ex post facto clause, *Rifai v. Parole Comm'n*, 586 F.2d 695, 698 (9th Cir.1978), we reverse and vacate the writ. But because the district court's other reason for granting habeas—that the Commission abused its discretion—is unclear, we remand for reconsideration and clarification. In remanding, we ask the court to decide whether Roth's abuse of discretion argument is really a claim that the Government violated his right to due process. Our remand, however, does not preclude the district court from permitting the Commission to re-examine Roth's case to decide whether Roth, in light of the events that have transpired in the last 9 months, would make better progress toward rehabilitation by remaining on parole.

## BACKGROUND

### A. *How the Parole Commission Operates*

Congress has vested the United States Parole Commission with broad authority to establish guidelines governing the parole of

federal prisoners. *See* 18 U.S.C. § 4203 (1982). Relying on this mandate, the Commission has established a formula for determining when a prisoner may be released on parole.

For our purposes,[1] the formula consists of two components: the "salient factor" score and the "offense severity" score.

The salient factor score focuses on the characteristics of the *offender*. It is a number indicating whether the prisoner is a good parole risk. The Commission commonly considers prior convictions in determining the salient factor score.

The offense severity score, on the other hand, focuses on the characteristics of the *offense*. It is a classification indicating how evil the crime is. Until recently, the Commission determined the offense severity score by considering only outstanding offenses.[2] That is, the Commission did not calculate an offense severity score on the basis of crimes for which the prisoner had already served full sentence.

## B. *Roth's Crimes*

In October 1979, Roth entered Safford Federal Prison to begin serving an 8-year prison term for committing two crimes: (1) violating his parole from a conviction for mail fraud in Chicago,[3] and (2) committing a second mail fraud offense in Denver. In 1975, he received a 3-year sentence for the Chicago crime, and in 1979, a 5-year sentence for the Denver crime.

The Commission held its first parole determination hearing in Roth's case on February 28, 1980. A panel of hearing examin-

ers awarded Roth a salient factor score of 10 and an offense severity score of "greatest I severity." In applying the Commission's existing guidelines to calculate these scores, the panel found no reason to "go above" the guidelines to set a parole date later than the scores called for.[4] The panel recommended that Roth be paroled after serving 40 to 52 months.

But an administrative hearing examiner and the Regional Commissioner disagreed with the panel's recommendation and referred Roth's case to the National Commissioners under 28 C.F.R. § 2.24(a) (1980). On May 12, 1980, the National Commissioners determined that Roth should serve 68 months.[5] To set the 68-month figure, the National Commissioners calculated a new salient factor score of 7, but arrived at the same offense severity score of greatest I severity. The National Commissioners computed a presumptive period of service of 52 to 64 months, and then exercised their statutory discretion to "go above" the parole guidelines.

Two years later, on February 9, 1982, the Commission held an interim hearing at Safford. A panel of examiners determined that the Commission should deduct 9 months from Roth's 68-month presumptive parole time because of his "superior achievement"—that is, good behavior—in prison.

According to Roth, an important event happened between his initial parole hearing on February 28, 1980, and his later hearing on February 9, 1982. On August 1, 1980, the Commission adopted new parole guide-

1. The Commission considers other factors, including how the prisoner has behaved and whether the prisoner has volunteered to work or learn a trade. Roth's case does not turn on these other factors.

2. This issue is disputed. Roth says that the Commission changed this policy on August 1, 1980, when it adopted 28 C.F.R. § 2.20 General Note E (1980). The Commission contends that this rule merely codified existing practice. *See infra* note 6.

3. The United States District Court for the Northern District of Illinois sentenced Roth to 6 months in jail and 3 years on probation. Be-

fore violating his parole, Roth served 4½ months in jail. Both the Bureau of Prisons and the Parole Commission credited this time against the combined 8-year term that is the subject of this appeal.

4. According to the Commission's guidelines, various salient factor/offense severity scores correspond to certain presumptive periods of incarceration.

5. Initially, the National Commissioners fixed a 69-month period. The record indicates, but does not readily explain why, this became 68 months.

lines. These guidelines required the Commission, before calculating the presumptive date of release on parole, to aggregate all of a prisoner's sentences. *See* 28 C.F.R. § 2.20 General Note E (1983), *originally published in* 45 Fed.Reg. 44,925 (1980).[6] In Roth's case, this meant adding his 3-year Chicago sentence to his 5-year Denver sentence.

Relying on the examiners' February 9, 1982 findings, and applying the new guidelines,[7] the National Commissioners on March 25, 1982 reduced Roth's presumptive service time to 59 months. But Roth wanted the 9 months deducted from the first examiner panel's determination that he should be released after serving 40 to 52 months. He unsuccessfully appealed the March 25 decision to various appellate levels in the Commission.

Finally, after serving nearly 36 months,[8] Roth petitioned on May 8, 1982 for a writ of habeas corpus. A magistrate considered the petition and filed a report recommending that Roth be paroled immediately. The district court adopted the report and ordered the Commission to reconsider Roth's application for early parole. Roth was released on April 7, 1983.

### C. *Gravamen of Roth's Complaint*

Roth's attack on the Parole Commission is two-fold. First, he contends that the Commission violated the ex post facto clause by aggregating his two sentences. He claims that before August 1, 1980, the date the new guidelines were promulgated, the Com-

mission would have paroled him in 40 to 52 months. Therefore, he believes he should not have to serve 68 months (minus 9 for superior achievement) before getting out.

Second, he argues that the Commission penalized him for the 1975 Chicago fraud conviction despite his having already paid his debt to society—that is, after he had served the entire 3-year sentence he received for violating his parole in the Chicago fraud case. Roth says that the Commission may not parole him from an expired sentence. He concedes that the Commission may—and it did—consider the Chicago offense to determine whether he was a good parole risk (his salient factor score), but insists that the Commission may not consider the *Chicago* offense to determine the opprobriousness of the harm he did in the *Denver* case, for which he is still paying his debt to society (the offense severity score). Roth submits that the Commission improperly penalized him twice for the Chicago offense when it calculated his presumptive date of release on parole.

### STANDARD OF REVIEW

■ The district court granted Roth's petition for a writ of habeas corpus. We review that decision de novo. *See United States v. Guido,* 597 F.2d 194, 197–98 (9th Cir.1979) (per curiam).

■ The parole statute, 18 U.S.C. § 4203 (1982), and the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), commit

---

**6.** In cases where multiple sentences have been imposed (whether consecutive or concurrent, and whether aggregated or not) an offense severity rating shall be established to reflect the overall severity of the underlying criminal behavior. *This rating shall apply whether or not any of the component sentences has expired.*

28 C.F.R. § 2.20 General Note E (1983) (emphasis added).

**7.** Neither the record nor the briefs establishes when or whether the Commission actually applied the August 1, 1980 guidelines to Roth. When the Commission first acted on Roth's case, the new guidelines had not yet been promulgated. When the Commission acted on Roth's case after August 1, 1980, the Commission did not appear—at least to us—to calcu-

late Roth's offense severity score differently from the way it had before August 1, 1980. In fact, the record does not conclusively say whether the Commission panel (which met February 9, 1982) or the National Commissioners (who reduced Roth's presumptive service time on March 25, 1982), changed Roth's offense severity score in any way. All indications are that these bodies merely worked with figures that the Commission had established two years earlier. But neither party raised this problem. Therefore, for purposes of deciding the ex post facto question, we assume that the Parole Commission, at one time or another, applied its new guidelines to Roth.

**8.** This period includes Roth's 31 months at Safford and his 4½-month credit.

parole decisions to the sound discretion of the Commission. Therefore, before upsetting the Commission's decision, the district court had to find that the Commission abused its discretion. *Reynolds v. McCall,* 701 F.2d 810, 813 (9th Cir.1983) (citing *Hatton v. Keohane,* 693 F.2d 88, 90 (9th Cir. 1982); *O'Brien v. Putnam,* 591 F.2d 53, 55 (9th Cir.1979)).

## ANALYSIS

### A. *Ex Post Facto Argument*

■ The ex post facto clause, U.S. Const. art. I, § 9, cl. 3, forbids the Government from passing any law "which punishes as a crime an act previously committed which was innocent when done; or [which] imposes additional punishment to that then proscribed." *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 325–26, 18 L.Ed. 356 (1867)). The purposes of the clause are to provide fair warning about new punishments and to discourage arbitrary and oppressive legislation. *Weaver,* 450 U.S. at 28, 101 S.Ct. at 963; *Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

In *Rifai v. Parole Comm'n,* 586 F.2d 695 (9th Cir.1978), we rejected essentially the same argument that Roth now urges.[9] There the prisoner claimed that the Commission's 1973 changes in its guidelines, together with Congress's 1976 amendments to the statute, fixed his parole date later than it would have been under the guidelines in effect when he committed his crimes.

The court held that the Commission's guidelines were "merely procedural guideposts, without the characteristics of laws." *Rifai,* 586 F.2d at 698. Guidelines, reasoned the panel, cannot be considered "laws" even though the Commission applies them with regularity. If that were true, "any policy or practice followed with some frequency would constitute a 'law' from which an agency could not vary." *Id.*

We have continued to adhere to *Rifai. See Reynolds v. McCall,* 701 F.2d 810, 814 n. 4 (9th Cir.1983); *cf. Holguin v. Raines,* 695 F.2d 372, 372 (9th Cir.1982) (denying habeas in ex post facto challenge to Arizona Department of Corrections change, to detriment of prisoner, in method of calculating parole eligibility); *Ogg v. Klein,* 572 F.2d 1379, 1383 (9th Cir.1978) (denying habeas in ex post facto challenge to Bureau of Prisons regulation, which restated prior law, adopted after youth had escaped from correctional facility).

■ We hold that the district court erred in finding that the Commission violated the ex post facto clause.

### B. *Abuse of Discretion Argument*

The district court apparently agreed with Roth's argument that the Commission abused its discretion. But the court's ruling is unclear. The court adopted the reasoning in the magistrate's report. That report relied principally on *DiNapoli v. Parole Comm'n,* 538 F.Supp. 658 (M.D.Pa. 1982), a case very similar to the one before us. Citing *DiNapoli,*[10] the report said:

It appears that the Parole Commission is treating petitioner in the same manner the court held was improper in ... *DiNapoli*[.] This is not in accord with the standards imposed by the court decisions. It is not proper to apply the new regulations to petitioner in this action. The court in *DiNapoli* held that such application of the regulations was a violation of the ex post facto provision[ ] of the Constitution.

But in the next paragraph, the report added:

It appears that there has been an abuse of discretion in the instant case. The

---

9. At oral argument, counsel for Roth finally conceded that the ex post facto contention is meritless.

10. The magistrate's report also cited *Silberberg v. Parole Comm'n,* 483 F.Supp. 1280 (M.D.Pa. 1980), which held that the Commission could

not base the prisoner's offense severity score on expired convictions. The *Silberberg* court did not identify the precise legal underpinning—such as an ex post facto, due process, or other violation—of its decision.

Parole Commission improperly aggregated petitioner's two sentences. The Parole Commission improperly used the expired sentence in determining petitioner's offense severity classification.

We read these statements as ruling that the Commission abused its discretion *because* it violated the ex post facto clause. But we have already held, *supra* p. 435, that the Commission did not violate the clause. Therefore, we cannot uphold this reading of the district court's abuse of discretion finding.

■ As we understand the matter, Roth's abuse of discretion argument is really a claim that the Government denied him due process of law in the way it applied its parole eligibility guidelines to him. He contends that the Commission used a method for determining his parole eligibility that effectively penalizing him twice for having committed the Chicago crime, even though he had already served full sentence for that crime. He appears to argue that Commission guidelines in effect when he committed both the Chicago and Denver crimes did not permit parole officials to do this.

We express no view on the merits of this argument. But we think the district court should take it up. Therefore, we remand for reconsideration and clarification as to this part of Roth's petition for habeas corpus.

C. *Effect of Our Decision on Roth*

■ In vacating the writ, we hesitate to require that Roth return to prison. At oral argument, the United States Attorney agreed to join Roth's request that, in the event we reversed the district court, the Parole Commission should reconsider Roth's eligibility for parole in light of the 9 months he has lived outside prison as a member of civilian society. Therefore, the district court, before taking up Roth's abuse of discretion argument, may wish to permit the Commission to reconsider Roth's parole eligibility and decide whether he would make better progress toward rehabilitation by remaining on parole. *See, e.g., United States v. White,* 540 F.2d 409, 412 (8th Cir.1976).

CONCLUSION

We hold that the district court erred in ruling that the Parole Commission violated the ex post facto clause. Accordingly, we vacate the writ of habeas corpus.

But because the court's abuse of discretion finding is unclear, we remand for further proceedings. On remand, the district court may wish to permit the Commission to reconsider whether Roth, in light of the 9 months he has been free, should remain on parole. In the event that the Commission denies parole, the district court should reconsider Roth's abuse of discretion argument as a due process claim.

The decision is REVERSED and the writ VACATED.