**Montana HORNER,**
**Petitioner–Appellant,**

v.

**UNITED STATES PAROLE COMMIS-SION, Respondent–Appellee.**

No. 87–2989.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1989.

Decided March 24, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc June 20, 1989.

John J. Cleary, San Diego, Cal., for petitioner-appellant.

Eugene R. Bracamonte, Asst. U.S. Atty., Tucson, Ariz., for respondent-appellee.

Before GOODWIN, ALARCON and NELSON, Circuit Judges.

ALARCON, Circuit Judge:

Montana Horner appeals from the district court's denial of his petition for a writ of habeas corpus. Horner seeks reversal on the following grounds:

One. The Parole Commission improperly denied him early termination of his parole in violation of 28 C.F.R. § 2.43(e), after he had completed three years without any adverse report concerning his behavior.

Two. His waiver of his right to counsel at the parole revocation hearing was invalid because it was the product of coercion and misrepresentation.

Three. He was denied access to adverse information in violation of 18 U.S.C. § 4208(c).

We disagree and affirm. We address each of Horner's contentions and the facts pertinent thereto under separate headings.

I

STANDARD OF REVIEW

We review the denial of a petition for habeas corpus independently, without deference to the district court's determination. *Roth v. United States Parole Commission*, 724 F.2d 836, 839 (9th Cir.1984). Our review of a Parole Commission's decision is very narrow. We may review "whether the Commission acted outside its statutory authority or has violated the Constitution." *Coleman v. Perrill*, 845 F.2d 876, 878 (9th Cir.1988). We are precluded from reviewing "whether the Commission's decision involves the exercise of judgment among a range of possible choices or options," but we may determine whether a decision involves "a plain violation of a matter which does not admit of discretion and choice." *Wallace v. Christensen*, 802 F.2d 1539, 1552 (9th Cir.1986) (en banc). If there is a violation of a non-discretionary matter, the Commission must show "good cause" for that action. *Id.*

## II

The Parole Commission revoked Horner's parole based on his conviction for conspiracy to possess with intent to distribute cocaine on or about April 16, 1982 and other evidence including Horner's admissions that he had engaged in narcotics trafficking over a two-year period. Horner argues that the Parole Commission order revoking his parole is invalid because he was entitled to be terminated from parole supervision in 1981 based upon the probation officer's June 1, 1981 report that "Mr. Horner has been making what appears to be a satisfactory adjustment under supervision." Horner also contends that the Parole Commission improperly denied early termination of his parole in 1981 in violation of its own regulation, 28 C.F.R. § 2.43(e)(1)(ii).

Horner summarizes this argument on pages 34 and 35 of his opening brief in the following words:

Because the Parole Commission improperly failed to comply with its own regulation and terminate petitioner's parole, the Pennsylvania federal parole term should be terminated effective May 1981 and the petitioner be given credit for time served in federal custody after that date on his San Diego federal sentence.

On June 2, 1976, Horner pled guilty in the United States District Court for the Western District of Pennsylvania to two counts in separate indictments of wilfully and knowingly conspiring to distribute and possess narcotics with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Horner was sentenced on these charges on June 2, 1976. In addition to ordering five-year sentences to be served consecutively, the district court imposed a special parole term under 21 U.S.C. § 841(b)(1)(B) of two years for each offense. A special parole term is a period of supervision "in addition to and not in lieu of any other parole provided by law." 21 U.S.C. § 841(c). In making its sentencing decision, the district court also ordered the special parole terms to run consecutively. Thus, the district court clearly intended that Horner be supervised on parole for four years in addition to any period of supervision ordered by the Parole Commission.

On April 16, 1978, the Parole Commission ordered Horner released on parole after he served 26 months of his ten-year consecutive sentence. His parole term was ordered to expire on February 28, 1986. In 1979, his parole supervision was transferred to Ventura, California.

One year later, on June 16, 1980, the Supreme Court held in *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), that a special parole term does not apply to conspiracy convictions under the Comprehensive Drug Abuse Prevention and Control Act. *Id.* at 400–01, 100 S.Ct. at 2258–59. Thereafter, on November 6, 1980, Horner's probation officer, Stanley R. Monaghan, wrote a letter to the Chief United States Probation Officer in Pennsylvania expressing his concern about the impact of the *Bifulco* decision on Horner's four-year special parole term which was due to commence on February 28, 1986. On November 19, 1980, the district court, acting *sua sponte*, issued an order eliminating Horner's special parole term. On May 5, 1980, the supervising probation officer recommended against early termination of parole. The Parole Commission's case analyst commented as follows:

Satisfactory adjustment. Because of SPT [special parole term] subject could be considered for early term of *regular* parole. However, in view of the fact that he was serving 2 consec. 5 yr. sentences & we do not have much info on offense, recommend continuance another year. *Next year may term[inate] early to SPT.*

(emphasis added).

The Parole Commission agreed with the case analyst's recommendation. Horner was continued on parole.

On June 1, 1981, Monaghan reviewed Horner's progress and stated:

Mr. Horner has been making what appears to be a satisfactory adjustment under supervision. He still has a committed fine with a balance of $3,575.20. He has been making fairly regular pay-

ments on this fine. Mr. Horner is working steadily and reporting promptly and his attitude appears to be very good. We are not recommending early termination because of the fact that he does have a committed fine and it should be paid in full before supervision is terminated.... Mr. Horner's overall response to supervision has been very satisfactory because of his steady employment and regular payments on his committed fine and regular office visits. His attitude is very good.

It is to be noted that his Special Parole Term which was part of his original sentence has now been deleted because of the Bifulco decision and we are sending you a copy attached to this form verifying this decision.

Thus, the probation officer recommended against early termination of the parole term set by the Parole Commission and alerted that body that the four-year special parole term had been deleted because of the Supreme Court's opinion in *Bifulco*.

The case analyst reviewed the probation officer's evaluation and made the following notation:

G/L [guidelines] 3 yrs. w/in G/L. P.O. [probation officer] is recommending continued supervision due to committed fine. Everything else looks positive. One prior conviction. *Should respond to P.O. advising fine no reason to continue & will consider* early term[ination] next year since w/in g/l. Continue. 6/9/81

(emphasis in original).

The Parole Commission agreed with the recommendation of the case analyst and the probation officer without comment.

Horner contends that the Parole Commission did not follow its own guidelines in declining to order early termination of his parole after receiving the probation officer's June 1, 1981 report. Horner relies on the following language from 28 C.F.R. § 2.43(e)(1)(ii):

(e) *Early termination guidelines:* In determining whether to grant early termination from supervision, the Commission shall apply the following guidelines:

(1) Absent case-specific factors to the contrary, termination of supervision shall be considered indicated when: ...

(ii) A parolee originally classified in other than the very good risk category (pursuant to § 2.20) has completed three continuous years of supervision free from any indication of new criminal behavior or serious parole violation.

Horner asserts that the Parole Commission continued petitioner's parole "because of the unpaid fine." Appellant's Opening Brief, page 22. In his Reply Brief at page 2, Horner states: "The *only* reason given, the fine, was admittedly in error, nevertheless, the Parole Commission gave no other reason." The record does not support Horner's contention that the Parole Commission rejected early termination because the fine was unpaid. In fact, as set forth above, the case analyst advised the Parole Commission that the fact that the fine had not been paid was *not* a valid reason to continue someone on parole. There is nothing in the record that would support an inference that the Parole Commission rejected the case analyst's conclusion that the failure to pay off the fine was not a valid reason to deny early termination.

The Parole Commission gave no reason for its decision to continue Horner on parole. The statute authorizing early termination of parole, 18 U.S.C. § 4211(b), does not require that the Parole Commission issue a statement of its reasons for an adverse determination.

We agree with Horner that the Commission is required to follow its own regulations. *Wallace*, 802 F.2d at 1552 n. 8. Horner has failed to demonstrate that the Parole Commission did not follow its early termination guidelines. The Parole Commission is not required to consider early termination of parole if there are case specific factors that caution against cessation of supervision.

The record shows that the trial judge intended that supervision of Horner continue for four years *after* the Parole Commission terminated his regular parole. After the district court imposed a consecutive sentence totalling ten years, to be followed

by four years of parole supervision *in addition to* that imposed by the Parole Commission, the Supreme Court ruled that special terms of parole could not be considered for a conspiracy offense. Accordingly, the district court was compelled to strike the special parole term provisions from the sentence.

■ The Parole Commission was advised of the district court's concern that Horner serve an extended period of time on parole on June 1, 1980 and June 1, 1981. The Parole Commission was free in the exercise of its discretion to continue Horner on parole, notwithstanding his apparent "satisfactory adjustment under parole supervision," in light of the trial judge's determination that a long period of parole supervision was required because of the serious nature of the charged crimes.

Consideration of the effect of the removal of the special parole requirement from Horner's sentence on his complete rehabilitation was an appropriate case specific reason to continue Horner on parole although he appeared to be making a satisfactory adjustment under parole supervision. The Parole Commission's decision was not "arbitrary, irrational, unreasonable, or capricious." *Wallace*, 802 F.2d at 1551.

### III

■ Horner contends that he was denied the right to be represented by counsel at his parole revocation hearing as the result of coercion and misrepresentation by a senior case manager, at the United States Penitentiary at Lompoc, California.

On April 21, 1982, the probation officer assigned to supervise Horner recommended that he be continued on parole. The Parole Commission was advised that Horner was a prime suspect in the transportation of narcotics between Southern California and Pennsylvania. Sometime in the first half of 1982, Horner absconded from parole supervision. On July 23, 1983, a parole violation report was submitted to the Parole Commission. Horner had failed to file a monthly report with his probation officer in May and June of 1982. He also failed to file a notice of change of address. In 1982, Horner was indicted in the Eastern District of Missouri for conspiracy to possess cocaine with the intent to distribute and using a telephone to arrange a controlled substance transaction.

On September 1, 1982, a parole violation warrant was issued for Horner's arrest. He was arrested in San Diego on April 3, 1985. On May 23, 1985, Horner filed a consent to transfer the Missouri indictment to the Southern District of California. On June 14, 1985, Horner entered a plea of guilty to a charge of conspiracy to possess with intent to distribute approximately three ounces of cocaine in violation of 21 U.S.C. § 846.

The Parole Commission scheduled a parole revocation hearing prior to the date of sentencing in the district court. On July 12, 1985, Horner's attorney, John J. Cleary, sent a letter to an assistant United States Attorney advising him that defense counsel would be out of the country on the date set for the parole revocation hearing. Mr. Cleary's letter contained the following language:

> Because I am familiar with the case and the basis for the parole revocation my client Montana Horner and I feel it is imperative that I be present at any parole revocation hearing. It is mandatory under 18 U.S.C. 4214(c) that this hearing be conducted within 90 days, but I have spoke [sic] with representatives of the Regional Office and indicated to them that my client would wish this hearing continued in order that I could be present. The hearing will be held and my client will have to request a continuance by himself, for I will be out of the country after today.

On July 15, 1985, a case manager at the United States Penitentiary at Lompoc, California, had a conversation with Horner. Horner's version of the case manager's statements was accepted as true by the district court. Horner informed the case manager that his attorney was out of the country. The case manager urged him to proceed with the parole revocation hearing in the absence of his attorney or he would "stay here in lockdown for two months

until the parole hearing officers come back in September."

The case manager advised Horner that "a guy often gets more time when he brings his attorney." The case manager also informed Horner that if he insisted on being represented by counsel, he would receive "a local Mexican attorney." The case manager told Horner that he would be released on parole after serving an additional 24—36 months in confinement. After speaking to Mr. Cleary's law partner, Charles Sevilla, the case manager advised Horner that Mr. Sevilla had agreed that Horner should proceed without counsel. Mr. Sevilla did not tell the case manager that Horner should proceed.

Horner signed a waiver of counsel in the case manager's presence on July 5, 1985. If this were the only waiver of counsel executed prior to the revocation hearing by Horner, we would be hard pressed to conclude that it was made freely and voluntarily. It is totally inappropriate for a case manager, who is aware that the attorney for a parole violator wants to be present at a revocation proceeding, to advise the prisoner that he should waive counsel. We also deplore the case manager's gratuitous and racist comments concerning the type of attorneys purportedly appointed to represent parolees at revocation hearings.

In stark contrast to the case manager's unacceptable behavior, the hearing examiners fully respected Horner's right to be represented by counsel. Prior to commencing the revocation proceedings, Mr. Cleary's July 12, 1985 letter, in which he stated that it was imperative that he be at the revocation hearing, was read to Horner. Nevertheless, Horner insisted on proceeding without counsel.

We are persuaded from the record that Horner's insistence on proceeding without counsel constituted a free, knowing and intelligent waiver. The case manager's inappropriate and erroneous advice was sufficiently attenuated by the lapse of time, the special caution exhibited by the hearing examiners to determine whether Horner's written waivers of counsel should be accepted, and Horner's decision to proceed without his counsel notwithstanding his attorney's recommendation that he seek a continuance. Cf. *Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963) (the taint of prior illegal conduct may be dissipated by the passage of time). The hearing examiners could not have been expected to have known of the case manager's misbehavior. Their questioning was aimed at allowing Horner to express any reservations he had about waiving counsel. The examiner's caution was both appropriate and sufficient, given that Horner apparently was not willing to disclose the case manager's advice.

Horner also contends that the case manager misrepresented the amount of time he would be required to serve if his parole was revoked. The case manager estimated that Horner would serve an additional 24—36 months. No misrepresentation occurred. The case manager was not told by Horner that he was involved in distributing about twelve ounces of cocaine per month for a two-year period.

IV

■ Horner alleges that the Parole Commission violated his statutory rights when it based its determination not to terminate his parole in 1982 on information which was not accessible to him. He also claims that the Parole Commission's failure to give him advance notice of such information prior to his parole revocation hearing in 1985 mandates a new hearing with the proper procedural safeguards.

Horner did not request these documents until April 11, 1985, four years after the Commission made its decision. The regulation 28 C.F.R. § 2.34 which permits access to adverse information proceeds as follows:

(b) Upon the ordering of a rescission hearing under this section, the prisoner shall be afforded written notice specifying the information to be considered at the hearing. The notice shall further state that the purpose of the hearing will be to decide whether rescission of the parole date is warranted based on the charges listed on the notice, and shall advise the prisoner of the procedural rights described below....

(f) The evidence upon which the rescission hearing is to be conducted shall be disclosed to the prisoner *upon re-*

*quest,* subject to the exemptions set forth at § 2.55.

*Id.* (emphasis added). Information is exempted from disclosure if it contains "[m]aterial which would reveal a source of information obtained upon a promise of confidentiality" or if harm might result if the information is disclosed. 28 C.F.R. § 2.55(c)(2). The record shows that certain information was deleted from the probation officer's reports because it contained the identity of a confidential informant. Disclosure might have resulted in harm to the informant. This material was properly deleted under 28 C.F.R. § 2.55(c). AFFIRMED.