**Robert GREENE, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

**Civ. No. 90–0646.**

United States District Court,
M.D. Pennsylvania.

Sept. 25, 1990.

Robert Greene, pro se.

Lorna N. Graham, U.S. Attorney's Office, Scranton, Pa., Richard Preston, Office of the Gen. Counsel, U.S. Parole Com'n, Bethesda, Md., for respondent.

## MEMORANDUM

NEALON, District Judge.

The petitioner, an inmate presently incarcerated at FPC–Allenwood, Pennsylvania, filed the above-captioned petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on March 27, 1990. *See* document 1 of record. Petitioner contended that the Parole Commission improperly computed his severity rating by incorrectly construing 28 C.F.R. § 2.20 (hereinafter Section 2.20). After this court granted respondent an enlargement of time, it filed a response to the petition on May 15, 1990, requesting that this court deny the petition. On May 25, 1990, petitioner submitted a reply to the response. The matter is now ripe for consideration.

## BACKGROUND

The instant case evolves out of petitioner's plea of guilty, in the United States District Court for the Eastern District of Pennsylvania, to conspiring with his brothers to distribute in excess of one kilogram of heroin in violation of 21 U.S.C. § 846. On September 9, 1987, he was sentenced to a six (6) year term of imprisonment for his offense.

In accordance with 28 C.F.R. § 2.12, an initial hearing by the Parole Commission was conducted on April 25, 1989, to determine his presumptive release date for parole. In order to make such a determination, the Commission sets a severity rating based partly by the quantity of pure heroin with which he was involved. Prior to petitioner's initial hearing, a prehearing assessment was prepared by a reviewer, in which his offense was tentatively rated a Category Eight severity due to his "non-peripheral role in the extremely large scale distribution of six kilograms or more of heroin of unknown purity." Document 10 of record, Exhibit B, Pre–Review Initial Hearing dated November 7, 1988, at p. 1. At that initial hearing, petitioner, through his counsel, argued that the approach taken by the pre-hearing reviewer in arriving at a tentative offense severity rating was incorrect. He offered two alternatives which he contended would result in a more accurate severity rating. First, in light of the determination by the Commission that the heroin was of unknown purity, his counsel prof-

fered that a sample seized on March 12, 1986 ought to be used as a representative bundle for determining the purity of heroin distributed. In so doing, counsel invited the examiners to assume that all the bundles contained .02 grams of pure heroin as that of the proposed representative example. *See id.*, Exhibit D at p. 2. Under this method, the total amount of pure heroin equated to under 100 grams, which, pursuant to Section 2.20,[1] would give petitioner a severity rating of Category Six. *See* document 10 of record, Exhibit C, Initial Hearing Summary, at pp. 2–3 (hereinafter Exhibit C). The other method suggested to calculate the amount of pure heroin utilized the total profit generated by all the brothers[2] ($30,000). The total profit is divided by the amount of profit per bundle ($15). That quotient equals the number of bundles of heroin (2,000). To then ascertain the total weight of pure heroin, the number of bundles is multiplied by .02 grams, the amount of grams of pure heroin per bundle as reflected on the DEA form evaluating the petitioner's proposed representative bundle ((30,000/15) X .02). *Id.*, Exhibit D, DEA Form 7 and Attachment. This approach, as petitioner's counsel argued, would equate to 47 grams of pure heroin, which would correlate to a severity rating of Category 5 under Section 2.20. *Id.*, Attachment, Exhibit C at p. 3.[3]

The examiners' panel considered and then rejected both of petitioner's computations, concluding that the most appropriate method to determine his severity rating is the one employed by the reviewer in his assessment of petitioner during the "Pre-Review Initial Hearing."[4] *Id.*, Exhibit C at pp. 1, 2–3. The panel stated:

> Regarding the offense severity, the panel believes that the Category 8 rating is correct because though the 150 kilograms amount that we are using is a gross amount, it is the best that we have because we do not have the purity. This makes the guidelines 120+ months.[5]

---

1. Section 2.20 states in pertinent part:

   Chapter Nine Offenses Involving Illicit Drugs
   Subchapter A—Heroin and Opiate Offenses
   901 *Distribution or Possession With Intent to Distribute*

   (a) If extremely large scale (e.g., involving 3 kilograms or more of 100% pure heroin, or equivalent amount), grade as Category Eight [except as noted in (c) below];

   (b) If very large scale (e.g., involving 1 kilogram but less than 3 kilograms of 100% pure heroin, or equivalent amount), grade as Category Seven [except as noted in (c) below];

   (c) Where the Commission finds that the offender had only a peripheral role, grade conduct under (a) or (b) as a Category Six;

   (d) If large scale (e.g., involving 50–999 grams of 100% pure heroin, or equivalent amount), grade as Category Six [except as noted in (e) below];

   (e) Where the Commission finds that the offender had only a peripheral role, grade conduct under (d) as Category Five.

   (f) If medium scale (e.g., involving 5–49 grams of 100% pure heroin, or equivalent amount), grade as Category Five;

   (g) If small scale (e.g., involving less than 5 grams of 100% pure heroin, or equivalent amount), grade as Category Four;

   \*       \*       \*       \*       \*       \*

   Notes to Chapter Nine:

   \*       \*       \*       \*       \*       \*

   (4) If weight, but not purity is available, the following grading must be used:

   *Heroin*

   Extremely large scale—6 kilograms or more

   Very large scale—2–5.99 kilograms
   Large scale—200 gms.–1.99 kilograms
   Medium scale—28.35–199.99 gms.
   Small scale—Less than 28.35 gms.

2. The sentencing court had modified the presentence report to reflect that petitioner and his brother Robert made five thousand dollars each, while his other brother Terrell made approximately twenty thousand dollars. Document 10 of record, Exhibit D, Transcript dated June 9, 1987, pp. 4, 8, 9–10. In sum, the brothers profited thirty thousand dollars.

3. Frankly, this court cannot determine how these calculations equate to 47 grams. However, for the purposes of this Memorandum, the court will accept this figure.

4. *See supra* note 1.

5. To determine petitioner's severity rating, the panel applied Section 2.20, Chapter Nine. *Supra* note 1. While the weight was known (gross weight of 150 kilograms of heroin), the purity was not. Therefore, pursuant to the "Notes to Chapter Nine," paragraph four, "If weight, but not purity is available," an amount of heroin "6 kilograms or more" is an "[e]xtremely large scale." *Supra* note 1, Notes to Chapter Nine. Under Chapter Nine, Subchapter A, 901(a), an "extremely large scale" is graded as Category Eight. *Supra* note 1.

*Id.* at 1; *see* Exhibit D, Transcript at 10–11 (sentencing judge allowed 150 kilograms of heroin, gross weight, to remain in the Presentence Report as the amount distributed by the brothers). By embracing the prehearing reviewer's conclusion, the examiners' panel adopted the quantity distributed by the conspirators as reflected in the Presentence Report and used that as a basis for petitioner's severity rating. They explicated it was the only concrete amount with which they were provided, without making calculations supported by unfounded assumptions regarding the purity of the bundles, as petitioner had argued for it to do. *Id.*, Exhibit C at p. 1; *see* Exhibit A at p. 3. Through its application of Section 2.20, *see supra* notes 1 & 4, the panel graded petitioner as a Category Eight. *Id.*, Exhibit C at p. 1, ¶ II. Since petitioner's six-year sentence required him to serve 48 months and the guideline range computed by the panel was 120 months, it recommended that petitioner continue to expiration.

The recommendation by the panel was referred to the Regional Commissioner who concurred with its assessment of petitioner as a Category Eight and ordered him to serve until expiration. *Id.*, Exhibit E, Notice of Action dated May 17, 1989. Petitioner appealed this decision to the Commission's National Appeals Board contending that his salient factor score had been incorrectly calculated and that his grade as a Category Eight was improper. After considering petitioner's claims, the National Appeals Board held in favor of petitioner regarding the salient factor, but upheld the Commission's Category Eight rating. *Id.*, Exhibit F, Notice of Action on Appeal.

### DISCUSSION

In his petition, Greene averred that the Parole Commission erroneously calculated his severity rating as a Category Eight by considering "the purity of the heroin in question to be unknown, and so relied on the gross weight of 150 kilograms to obtain the relevant offense severity rating." Document 1 of record at ¶ 10, Attach Statement of Facts. He further contended,

such a finding does not represent the explanation of the facts that best accords

with reason and probability. The Parole Commission should have employed the preponderance of the evidence test to find that the pur[i]ty of the heroin in question was two percent for the first two months and one percent for the last fourteen. These pur[i]ty figures establish that the appropriate category for my offense behavior is category five.

*Id.* Finally, he argued,

The Commission's error is further compoun[d]ed by concluding in the notice of action that the conspiracy involved 6 kilograms of pure heroin, when the government conceded that I distributed the equivalent of 6.4 grams of heroin and [ ] earned $5000.00 and the orga[n]ization led by Terrell Greene of 20,000. This is not a Category Eight offen[s]e and the Commission has no perponderance (sic) of the evidence as required by 28 C.F.R. 2.19(c) and 2.20–04 to support a finding of a non-peripheral role in a Category Eight offense. The fact is that I occupied a peripheral role in a small scale heroin organization by distributing a total amount of 6.4 grams of 100% pure h[e]roin and my offense severity should not exceed category 5.

*Id.*

### A. Quantity of Heroin

It is well-established that a federal court's review of a Parole Commission's decision is restricted to an "abuse of discretion" standard—determining whether there exists a rational basis in the record for the Commission's action. *Campbell v. U.S. Parole Comm'n*, 704 F.2d 106, 109–10 (3d Cir.1983) (quoting *Zannino v. Arnold*, 531 F.2d 687, 691 (3d Cir.1976) ("Our inquiry in reviewing a Parole Commission decision 'is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons' "); *Paris v. Whalen*, 666 F.Supp. 715, 718 (M.D.Pa. 1987) ("The role of a reviewing court is to determine whether the Commission abused its broad discretion by inquiring as to whether there is a rational basis on the record for the Commission's conclusion"); *Butler v. U.S. Parole Comm'n*, 570

F.Supp. 67, 77 (M.D.Pa.1983) (The court is not empowered to substitute its own judgment for that of the Commission in evaluating petitioner's claims unless the Commission's exercise of its discretion represents an egregious departure from rational decision-making).

Although the court is limited in its review of the Commission's substantive decision, it may inquire as to whether the Commission provided the inmate a meaningful statement of reasons for its actions. *See, e.g., Butler,* 570 F.Supp. at 81; *United States ex rel. Jacoby v. Arnold,* 442 F.Supp. 144, 147 (M.D.Pa.1977); *Soloway v. Weger,* 389 F.Supp. 409, 410–11 (M.D.Pa. 1974). Under 18 U.S.C. § 4206(b) (hereinafter Section 4206),[6] if parole is denied, the Commission is mandated to give a notice which "state[s] with particularity the reasons for such denial." *See also* 28 C.F.R. 2.13(c) & 2.24. In *Marshall v. Lansing,* 839 F.2d 933 (3d Cir.1988), the United States Court of Appeals for the Third Circuit applied the language of this statute in the context of a case similar to the one *sub judice.* In that case, the Commission determined that the prisoner's offense involved more than one kilogram and less than five kilograms of pure cocaine and thus, assigned him an offense severity rating of Category Six. It also assessed him as a "very good" parole risk, giving him a salient factor score of nine. *Id.* at 936. Given these ratings, the Commission's guidelines called for granting parole after 40–52 months of imprisonment. His imprisonment was continued until the expiration of his term which was approximately 48 months. *Id.* at 936–37.

The Court of Appeals noted, in *dicta:* We assume, without deciding, that a brief, even superficial, statement of reasons is sufficient to satisfy § 4206(b) in the ordinary case. (Footnote omitted). The legislative history makes clear that "[a] formal judicial factfinding is not required, but the inmate must receive an understandable explanation of his parole

status." S.Rep. No. 369, 94th Cong., 2d Sess. 25 (1975), *reprinted in* 1976 U.S. Code Cong.Admin.News 335, 346. The Commission, upon a decision to deny parole, need only provide "a statement containing [the prisoner's] severity of offense rating, the calculation of his salient factors [sic] score and an explanation of how such a determination utilizing the guidelines was reached." *Id.*

*Id.* at 942. The Court went on to find where reasoning is not apparent from the surrounding facts of the case, the indictment, or the presentence investigation, a statement of reasons must then reveal reasoning and not simply present conclusions. It stated, "[t]he agency must set forth the basis for its decision 'with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.'" *Id.* at 944 (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947)). It then concluded that, even assuming facts most favorable to the Commission in calculating the amount of pure cocaine, it could not attribute one kilogram of pure cocaine to the prisoner, "without making inferential reasoning from allegations in the presentence report, reasoning which may be appropriate if explained but is not readily apparent." *Id.* at 942.

*Marshall* is distinguishable from the case at bar. Here, the reasoning is apparent from the facts of the case and no obscure arithmetic or inference is required to determine how the Commission relied on 150 kilograms of heroin as the amount implicated. This amount is unequivocally expressed in the presentence investigation, document 10 of record, Exhibit A, at p. 3, and, indeed, the sentencing judge permitted that quantity to remain in the report. *Id.,* Exhibit D, Transcript at pp. 10–11. The Commission need not provide detailed reasons for relying on the amount expressed

---

**6.** Section 4206, together with the rest of the Parole Commission and Reorganization Act, 18 U.S.C. §§ 4201–18, was repealed with respect to offenses committed after November 1, 1986, by

P.L. No. 98–473, Title II, § 218(a)(5), 98 Stat. 2027, 2031 (Oct. 12, 1984). Neither party disputed the application of the repealed law to this case.

in the report and for rejecting petitioner's two alternatives, but is required only to reveal a "road map" of its decision so the prisoner can adequately understand his parole status, 839 F.2d at 942, and the court can make an informed determination as to whether the Commission abused its discretion in applying the guidelines. In this case, the Commission simply found 150 kilograms to be the appropriate quantity on which to base its decision, because "it is the best that we have because we do not have the purity." In fact, in the "Pre–Review Initial Hearing" report, the reviewer stated, "Definitive Data showing the total quantities and purities of these substances sold during the life of the conspiracy has not been provided for Commission consideration." Document 10 of record, Exhibit B at 1. He then reasoned, "[t]he offense behavior is rated as category eight severity because: it involved a non-periphernal (sic) role in the extremely large scale distribution of six kilograms or more of heroin of unknown purity." *Id.* Finally, in the Notice of Action, the Northeast Regional Commissioner, explained in full:

> Your offense behavior has been rated as Category eight severity because it involved the distribution of extremely large scale amounts of heroin (6 kilograms or more) of unknown purity. Your salient factor score (SFS–81) is 6. You have been in federal confinement as a result of your behavior for a total of 15 months. Guidelines established by the Commission indicate a range of 120+ months to be served before release for cases with good institutional adjustment and program achievement. After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted. As required by law, you have also been scheduled for a statutory interim hearing in October, 1990.

*Id.,* Exhibit E.[7]

■ Thus, because this case is of an ordinary variety, unlike *Marshall* in which

the Commission's reasoning was not apparent from the facts of the case and required the court to do more than simple arithmetic or draw obvious inferences, the Commission has satisfied its obligation to "state with particularity the reasons," by providing petitioner with a statement containing his severity of offense rating and an explanation of how such a determination utilizing the guidelines was reached. In sum, while the Commission has not articulated a connection between the facts found and the choices made in the "Notice of Action" or "Notice of Action On Appeal", the court still upholds its decision since its path of reasoning is reasonably discernible from the administrative record.

■ Finally, as espoused heretofore, this court's review of the Commission's substantive decision is limited to whether the Commission had abused its discretion by determining whether there is a rational basis in the record for its conclusion. *See supra* p. 653 and accompanying citations. Moreover, the weight attributed to a particular piece of evidence is a matter committed solely within the Commission's broad discretion, *Geraghty v. U.S. Parole Comm'n,* 719 F.2d 1199, 1207 (3d Cir.1983), *cert. denied,* 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984) (quoting H.R.Conf. Rep., No. 94–838, 94th Cong., 2nd Sess. 26, *reprinted in* 1976 U.S.Code Cong. & Admin.News 335, 360), and a written evaluation of every piece of information considered is not required. H.R.Conf.Rep., No. 94–838, 94th Cong., 2nd Sess. 28, *reprinted in* 1976 U.S.Code Cong. & Admin. News 335, 360. The record here clearly demonstrates that the Commission had contemplated, in addition to the presentence report, the alternative arguments presented by petitioner's counsel, although it did not expressly evaluate them in their summary or "Notice of Action." *See* Document 10 of record, Exhibit C at 3 (discus-

---

7. Although the court is unsure as to whether plaintiff received the "Pre–Review Initial Hearing" report and the "Initial Hearing Summary" along with the "Notice of Action," it is evident from the record that petitioner's counsel was aware of the underlying theory upon which the Commission predicated its finding. Therefore, petitioner had adequate knowledge to challenge the Commission's finding in his subsequent administrative appeal.

sion by hearing panel of the alternative approaches that petitioner's counsel contended ought to be utilized). It had before it a presentence report which indicated that petitioner was involved in a conspiracy with his brothers which "distributed more than 150 kilograms (gross weight) of heroin." *Id.*, Exhibit A at 3. Additionally, the sentencing judge refused the invitation by defense counsel to eliminate or modify that quantity in the presentence report.[8] *Id.*, Exhibit D, Transcript at 10–11. Therefore, the Commission simply found that relying on the gross amount reflected in that report was more accurate than those calculated by petitioner's counsel. This is a decision that is well within the discretion of the Commission and will not be disturbed by this court so long as there is, as there is here, some rational basis in the record upon which the decision could be predicated.[9]

**B. The Conspiracy**

■ The petitioner also asserts that the Commission improperly held him accountable for the actions of the entire heroin distribution organization. He is somewhat mistaken, however, in that the Commission only focused upon the actions of petitioner and his co-conspirator brothers and not those of the entire organization. *See* document 10 of record, Exhibit B at 1 ("This trio is identified as having distributed over 150 kilograms of heroin (gross weight) between November of 1984 and March of

1986"); Exhibit A at 3 ("Throughout the life of this sixteen-month conspiracy, the Greenes distributed more than 150 kilograms (gross weight) of heroin").

To the extent petitioner is inviting this court to hold that the Commission's attribution of his brothers' actions was inappropriate, it will be declined. The court is cognizant that the regulations state:

"The prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is not to be held accountable for activities committed by associates over which the prisoner has no control and could not have been reasonably expected to foresee."

28 C.F.R. § 2.20, Ch. 13, Subch. A, ¶ 4. This, however, does not mandate that *any* act committed by a cohort is not permitted to be counted. *See, e.g., DiNapoli v. U.S. Parole Comm'n*, 538 F.Supp. 658, 663 (M.D.Pa.), *affirmed*, 676 F.2d 684 (3d Cir. 1982) (held that prisoner "was convicted of involvement in a drug conspiracy and therefore cannot separate himself from all of the drugs alluded to in the indictment," despite the fact that his "involvement was by the Government's bill of particulars and the trial evidence a single kilogram"); *Cerullo v. Gunnell*, 586 F.Supp. 211, 215 (D.Conn.1983) (concluded that holding the prisoner accountable for cars stolen in furtherance of the conspiracy was proper, even though petitioner was only directly involved with six cars); *see also Campbell*,

---

**8.** Petitioner referred to the fact that the sentencing judge ordered the presentence report of his co-defendant brother, William Greene, who he alleges had the same role as himself, to be amended in order to reflect the average weight and number of bundles of heroin supplied by them during the course of the conspiracy; and his own report to be amended to reveal that he made no more than $5,000 during the life of the conspiracy, rather than the $100,000 cited in the report. Although this may be true, the Commission, within its discretion, may still decide the amount of weight to be accorded to that evidence as opposed to any other evidence in the record. *See supra* p. 655 (citing *Geraghty*, 719 F.2d at 1207).

**9.** Likewise, to the degree petitioner claims that the Commission should have described his role in the conspiracy as "non-peripheral", *see supra*

note 1, it fails. The regulations define "peripheral role" as:

"that of a person hired as a deckhand on a marijuana boat, a person hired to help offload marijuana, a person with no special skills hired as a courier of drugs on a commerical (sic) airline flight, or a person hired as a chauffeur in a drug transaction. This definition does not include persons with decision-making or supervisory authority, persons with relevant special skills (e.g., a boat captain, chemist, or airplane pilot), or persons who finance such operations."

28 C.F.R. § 2.20 Ch. 13, Subch. B, ¶ 14. There was evidence in the record upon which the Commission could have rationally concluded that he was not peripherally related to the conspiracy (e.g., the brothers distributed 150 kilograms (gross weight) of heroin, document 10 of record, Exhibit A at 3; and, he was a mid-level dealer, *id.* at 8–12). *See also infra* p. 656.

704 F.2d at 111–112 (in determining whether the Commission properly went outside the guidelines, the court found it not to be unreasonable for the Commission to have concluded it was appropriate to hold a prisoner accountable for purposes of parole for the murder of the cab driver since he participated in the abduction of the cab driver; that abduction was in furtherance of the bank robbery; he watched his confederates march the cab driver into the woods at gun point; and he made no effort to deter any subsequent harm to the driver).

In the case *sub judice*, petitioner claimed that he was not involved with 150 kilograms (gross weight) of heroin and explained that he was a street level dealer participating only through his older brother. Document 10 of record, Exhibit C at 3. Other evidence existed, however, in the presentence report which demonstrated that, as a street dealer, petitioner had an integral part in the distribution of the 150 kilograms (gross weight) of heroin:

> Robert was supervised by his brother and co-defendant Terrell Greene to distribute the heroin and the collection of the proceeds from its sales. The Government evidence shows that the Greene brothers distributed as much as fifty bundles of heroin at least four or five days every week. Robert Greene was involved with the organization sometime in 1984 and is viewed by the government as mid-level in culpability. Because of his street-level distribution of heroin, Greene exposed the community to further danger by insuring the continuation of the flow of drugs in the neighborhood.

*Id.*, Exhibit A at 19. Consequently, given the relationship between petitioner and his brothers, it is rational for the Commission to consider their concerted actions to assist in arriving at petitioner's severity of offense rating, especially given the fact that petitioner knew of his brothers' intentions to distribute the drugs implicated in the conspiracy and that nothing in the record

exists to indicate that he ever attempted to deter them from such action.[10]

### C. Institutional Adjustment

■ Finally, petitioner complains that the Commission failed to adjust his release date "at or near the bottom of [his] guidelines" for his institutional adjustment and cooperation with state authorities in an unrelated murder in Philadelphia, Pennsylvania. Document 1 of record, Attach Statement of Facts at 2.

It is evident in the record that the Commission did contemplate petitioner's "outstanding" institutional adjustment and cooperation with state authorities. *See* Document 10 of record, Exhibit C at 2 & 3. Nonetheless, it concluded that these factors did not warrant a placement in the lower part of the guideline range. *Id.* at 3; *Id.*, Exhibit E. The examiners enunciated in pertinent part:

> The panel acknowledges that Subject's institutional adjustment has been outstanding and there is documented cooperation regarding a murder in Phila., PA but all of this does not of (sic) set the fact that he was a midlevel dealer of heroin in a conspiracy that was responsible for the extremely large scale distribution of the drug. He was also on state probation at the time.

Document 10 of record, Exhibit C at 3. Such a within-guidelines decision is committed to the discretion of the Commission and cannot be disturbed, unless it is found to be arbitrary and capricious so as to violate petitioner's due process rights. *Marshall*, 839 F.2d at 949–50 ("The role of the court, in reviewing a within-guidelines parole decision, is therefore essentially limited to insuring that the guidelines were in fact followed, once the Commission has exercised its informed discretion"); *Campbell*, 704 F.2d at 113–14. Clearly, the Commission's decision in this case is not arbitrary and capricious in light of the surrounding facts and, thus, withstands constitutional muster.

---

**10.** As one District Court judge espoused,
[t]he essence of the crime of conspiracy is the illegal and dangerous combination of persons to pursue unlawful ends. The criminal synergy created by such a cabal threatens society

more than do the isolated acts of individuals (Footnote omitted). Having chosen to join in this conspiracy, petitioner may not artificially sever his actions from those of his fellows. 586 F.Supp. at 215.

For all of the aforementioned reasons, the court will deny Greene's petition for a Writ of Habeas Corpus. An appropriate Order will enter.