**UNITED STATES of America ex rel. John FARESE # 12136–054**

v.

**Dennis LUTHER, Warden**

**John Farese, Appellant.**

**No. 91–3250.**

United States Court of Appeals, Third Circuit.

Submitted Under Rule 12(6) Oct. 1, 1991.

Decided Jan. 7, 1992.

Cheryl J. Sturm, West Chester, Pa., for appellant.

Thomas W. Corbett, Jr., U.S. Atty., Bonnie R. Schlueter, Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, Pa., for appellees.

Before SLOVITER, Chief Judge,
COWEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Senior Circuit Judge.

This appeal raises the question of whether the United States Parole Commission properly considered, for purposes of determining eligibility for parole, the activities of co-distributors of an illegal drug substance over which petitioner had no control and could not have been expected reasonably to foresee. Specifically, the petitioner Farese, convicted for conspiracy to distribute cocaine, challenges the Commission's decision to base his offense severity rating on the total amount of cocaine distributed by his co-defendants, 15 kilograms, instead of rating him only on the basis of the 2.5 kilograms he himself distributed. He points to the Commission's regulation which states that it cannot hold a prisoner accountable for activities committed by associates over which the prisoner had no control and could not have been expected reasonably to foresee. The Regional Commission rendered a decision continuing Farese for a presumptive parole after the service of 72 months, based upon a severity rating of category seven.[1] Farese appealed to the Parole Commission's National Appeals Board, contending that the correct offense severity was category six, which covers distribution of between 1.25 and 6.24 kilograms of cocaine of unknown purity. The National Appeals Board affirmed the Commission's decision.

Having exhausted his administrative remedies, Farese filed a writ of habeas corpus petition in the United States District Court for the Western District of Pennsylvania, alleging that the Parole Commission violated his due process rights by (1) rating his offense severity in reliance upon erroneous information, in violation of the Commission's rules and regulations, and/or calculating offense severity in an arbitrary and capricious manner; and (2) issuing legally and logically deficient notices of action in his case. The district court, on the recommendation of the magistrate, denied the petition for habeas writ. The petitioner appealed. We reverse.

## I.

In 1987, Farese pled guilty to charges of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846, and possession of property obtained from a criminal enterprise in violation of 21 U.S.C. § 853. The charges stemmed from Farese's purchase of drugs from an organization headed by one Gary Feola. According to the presentence investigation report, Feola received in excess of 15 kilograms of cocaine from several sources, and sold kilogram quantities of cocaine to eleven distributors, including Farese, located in Westchester County, Brooklyn, and Long Island, New York, Baltimore, Boston and New Jersey. The conspiracy count to which Farese pled guilty did not list a specific quantity of cocaine or other controlled substance.

The "Culpability Index" of Farese's presentence investigation (PSI) concluded that, "[i]n the Government's view, the cocaine distributors in the Feola organization ... are, more or less, equally culpable. Each was a major, multi-kilogram cocaine dealer who operated in blatant disregard of the narcotics laws for many years." The "Prosecution's Version" of the PSI stated that Feola "was distributing kilo quantities of cocaine" to Farese, referred to Farese as a "multi-kilogram" cocaine dealer, and stated that "Feola and his co-conspirators distributed well in excess of 15 kilograms of

---

1. With a salient factor score of seven, the Commission guidelines indicated a range of 64–92 months. The Commissioner included a 12- month credit for superior program achievement in setting the presumptive date of 72 months.

cocaine." However, it did not provide any specifics as to the total amount of cocaine Farese personally allegedly distributed. In the "Defendant's Version" of the PSI, Farese stated that from sometime in 1984 until the time of his arrest in November, 1985, "he was selling cocaine to a small group of individuals ... amount[ing] to a few ounces 'here and there' totalling approximately eight ounces per month, for a fee of $1900.00."

Farese received a 12–year sentence which he began serving in October of 1989. The initial hearing to determine his presumptive release date for parole took place on December 20, 1989. At the parole hearing, Farese again stated that he had been distributing cocaine for approximately ten months and had distributed approximately eight ounces of cocaine monthly. He denied that he had been involved in the distribution of a minimum of six kilograms of cocaine during his period of association with Feola.

The parole examiners were in disagreement as to the appropriate offense classification for Farese. Hearing Examiner Tenney recommended an offense severity rating of category seven, holding Farese accountable for 6.25–18.74 kilograms of cocaine of unknown purity. Tenney believed that Farese "should be held responsible for the overall conspiracy amount of 15 kilograms because of his significant role in the conspiracy and the fact that he received a sentence longer than anyone else." Hearing Examiner Newman, on the other hand, recommended an offense severity of category six, noting that the Commission had so rated one of Farese's co-defendants and concluding that Farese appeared to truthfully state the extent of his involvement in the offense, which amounted to the distribution of "slightly over 2 kilograms of the substance."

In the notice of action accompanying the decision, the Commissioner explained that he rated Farese's offense as severity seven "because it involve[d] conspiracy participation in the very large scale distribution of 6.25–18.74 kilograms of cocaine of unknown purity." Farese asserts that he had

no contact with his co-defendants, other than Feola, and that there was no evidence that he could foresee and control the actions of the co-defendants. He therefore argues that the Commission rendered its decision, which must be based upon accurate information and under a preponderance of the evidence standard, on an unsupportable record.

## II.

On appeal, Farese's first claim is that the Parole Commission violated his fifth amendment due process rights by basing his offense severity rating on the entire amount of cocaine distributed by all of the defendants during the life of the conspiracy. Farese argues that the Commission so based his rating in violation of its regulations, which state in part:

> The prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is not to be held accountable for activities committed by associates *over which the prisoner has no control and could not have been reasonably expected to foresee.*

28 C.F.R. § 2.20, Ch. 13, Subch. A, Note 4 (emphasis added). According to Farese, this regulation requires the Commission to "carve out" his participation in the conspiracy, and hold him accountable, in the absence of any evidence to the contrary, only for the amount of cocaine which he admits distributing, 2.5 kilograms of unknown purity.

Farese also contends that the Commission violated its rule requiring it to resolve prisoner disputes concerning the accuracy of the information presented to it by a "preponderance of the evidence standard." United States Parole Commission Rules and Procedure Manual § 2.20–04 (1985); 28 C.F.R. § 2.19(c). Under this regulation, if the prisoner disputes the accuracy of the information presented, "the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best ac-

cords with reason and probability." *Id.* Farese asserts that because the Commission was presented with no evidence contrary to his admission of distributing 2.5 kilograms of cocaine, it failed to observe the preponderance standard when it held him accountable for 15 kilograms.

The district court, relying upon our decision in *Campbell v. United States Parole Commission,* 704 F.2d 106 (3rd Cir.1983), upheld the Parole Commission's decision to hold Farese accountable for the total amount of cocaine distributed by his co-defendants. In *Campbell,* the Parole Commission assigned a prisoner accountability for a murder that his co-conspirators committed without his participation or prior consent, because the murder was committed in furtherance of the conspiracy. We ruled that the Commission had not deviated from the requirement in its manual that it hold a prisoner liable only for those actions committed by associates which he could have controlled or about which he should have known.[2] We also stated in *Campbell,* which appears to have influenced the district court's decision in this case, that

> [t]he simple fact is that the prisoner must bear responsibility, both under the criminal law and before the board of parole, for actions of his confederates in furtherance of the conspiracy.... Petitioner cannot escape responsibility by hiding his head in the sand and blaming others. He was a full participating member of the conspiracy and shared in its gains. The Board of Parole could justly conclude that one who participated in such a scheme is of particular concern to society.

*Id.* at 112 (quoting *McArthur v. United States Bd. of Parole,* 434 F.Supp. 163 (S.D.Ind.1976), *aff'd mem.,* 559 F.2d 1226 (7th Cir.1977)).

This case, however, is factually distinguishable from *Campbell.* In *Campbell,* the conspiracy scheme involved the abduction of a cab driver in order to obtain a car for a bank robbery. *Campbell* appears to

have relied on the *Pinkerton* theory of conspiracy, which holds that as a matter of law, a defendant may be vicariously responsible for the actions of his co-conspirators. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Apparently of controlling significance in the majority's reasoning in *Campbell* was that the parole petitioner "participated in the abduction of the [murdered] cab driver; that abduction was in furtherance of the bank robbery; he watched his confederates march the cab driver into the woods at gunpoint; and he does not suggest that he made any effort to deter any subsequent harm to the driver." *Campbell,* 704 F.2d at 112. None of these factors of active participation, knowledge, and control of the activities of the co-conspirators are present in this case. There is no evidence in the record establishing that Farese could control and foresee the actions of his co-defendants, much less that he knew there were conspirators, their identity, or the scope of their activities.

█ The Parole Commission regulation requires the Commission to establish control and foreseeability before holding the prisoner vicariously responsible for co-conspirator actions. An agency must follow its own regulations, which have the force of law, *Marshall v. Lansing,* 839 F.2d at 943, and the Parole Commission's regulations state that in dealing with terms of parole rather than legal responsibility for the substance or conspiratorial crime, the Commission cannot hold a prisoner responsible for the actions of his co-defendants merely because the prisoner was convicted of conspiracy. *Roberts v. Corrothers,* 812 F.2d 1173, 1180 (9th Cir.1987) (although co-conspirators may be equally culpable as a matter of law, the Parole Commission's inquiry into offense severity "focuses on the 'actual offense behavior' of the individual prisoner and examines the actual quantity of drugs involving each co-conspirator"); *see also Augustine v. Brew-*

---

**2.** In *Campbell,* we referred to this policy only as being contained in the Parole Commission's Guideline Application Manual. *See Campbell,* 704 F.2d at 112 n. 6. However, the Commission

is required to follow this procedure, as it is a duly promulgated administrative *regulation. See Marshall v. Lansing,* 839 F.2d 933, 943 (3rd Cir.1988).

*er,* 821 F.2d 365, 370 n. 5, 371 n. 6 (7th Cir.1987) (co-conspirator must have been in a position to exercise control over or reasonably foresee acts committed by the conspiracy before the Parole Commission may hold him accountable for such acts).[3] Thus, unless there is some evidence establishing that Farese somehow controlled the activities of the conspiracy and could foresee the activities of the other co-defendants, the Commission's regulation prohibits it from computing Farese's offense severity on the basis of the amount of cocaine distributed by the overall conspiracy.

■ When reviewing a Parole Commission decision, we must determine "whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." *Campbell,* 704 F.2d 106; *see also Marshall v. Lansing,* 839 F.2d at 945 n. 17. A review of the information before the Commission reveals that the Commission's conclusion that Farese was accountable for all cocaine distributed during the course of the conspiracy squares neither with the facts which were before it nor with its own regulations. First, there was no evidence from which the Commission could have found the elements of control and foreseeability. The record reveals that Feola was at the center of the distribution, selling to eleven distributors geographically dispersed among New York, New Jersey, Baltimore and Boston. The PSI contains no evidence that Farese was aware of the existence of the other cocaine distributors named in the indictment, that he had contact with any other distributor except Feola, or that he had any knowledge of or control over Feola's dealings with other members of the distribution.

The PSI report states that the Government alleged that Farese and other co-defendants conversed with an undercover officer regarding the sale of up to a kilogram and subsequently the officer purchased 96 grams of cocaine from Farese and made another purchase from a co-defendant, at Farese's home, of 226 grams. Even charging Farese with knowledge of the sale at his home, the aggregate amounts to 322 grams, or less than one-third of a kilo. Thus, were we to accept the Government's version as factual, there is still no basis for a category seven rating.

Second, as Farese argues, there was no preponderance of the evidence that he was aware of any quantities of cocaine distributed by Feola except those which he personally received. The PSI did not specify the amount of cocaine distributed for which Farese was personally responsible. Both in the "Defendant's Version" of the PSI and at his parole hearing, Farese asserted that he had been involved in the cocaine distribution ring for approximately ten months and distributed approximately eight ounces of cocaine monthly, for an aggregate amount of slightly over 2 kilograms. In addition, at his parole hearing, he denied that he had been involved in the distribution of a minimum of six kilograms of cocaine, and Hearing Examiner Newman stated that Farese appeared to be truthful when discussing the extent of his cocaine distribution.

---

**3.** The *Augustine* court found that the prisoner, who held a *leadership position* in the drug trafficking organization, could reasonably foresee acts of his co-conspirators. Similarly, other cases in which courts have upheld the Parole Commission's decision to consider co-conspirator actions in computing a prisoner's severity rating include circumstances where the prisoner has held a leadership position in the illegal conduct, indicating the prisoner's control over and reasonable foresight of his co-conspirators' activities. *See e.g., Greene v. U.S. Parole Comm'n,* 749 F.Supp. 650, 656–57 (M.D.Pa.1990) (prisoner who worked closely with his brothers and *knew of their intentions* was held vicariously liable for acts of his brothers, but not for acts of other co-conspirators); *Lee v. U.S. Parole Comm'n,* 614 F.Supp. 634, 638–39 (D.C.N.Y. 1985) (*active participant* in two-person conspiracy to escape could reasonably forsee assault by co-conspirator); *Cerullo v. Gunnell,* 586 F.Supp. 211, 215 (D.Conn.1983) (prisoner liable for his co-conspirators' activities because the PSI described him as an *integral "cog"* in multistate theft ring and there was no support in the facts before the Commission for the prisoner's contention that he knew nothing about the activities of his co-conspirators); *DiNapoli v. U.S. Parole Comm'n,* 538 F.Supp. 658, 663 (M.D.Pa.1982) (because drug *"boss"* was convicted of involvement in a drug conspiracy, he could not separate himself from all of the drugs alluded to in the indictment).

Faced with the facts before it, the Commission could not have concluded rationally, under a preponderance standard, that Farese could have controlled or foreseen the sale of more than 2.5 kilograms of cocaine.[4] As there were no facts before the Commission which, by a preponderance of the evidence, showed that Farese was responsible for the distribution of more than 2.5 kilograms of cocaine, the Commission erred in holding him accountable for 15 kilograms of the substance.[5]

## III.

Accordingly, the judgment of the district court will be vacated and the case remanded with directions to remand to the Parole Commission with instructions to reduce the petitioner's severity rating to category six.

SLOVITER, Chief Judge, dissenting.

The majority concludes that the acts of Farese's co-conspirators in a spoke-and-wheel conspiracy may not be considered in the calculation of the prisoner's parole eligibility under 18 U.S.C. § 4206 (1988), *repealed by* Comprehensive Crime Control Act of 1984, Pub.L. 98–473, Title II, § 218(a)(5), 98 Stat. 2027. Because I believe that the majority has improperly substituted its judgment for that of the United States Parole Commission, I respectfully dissent.

The majority bases its decision on 28 C.F.R. § 2.20, Ch. 13, Subch. A, Note 4 (1991), which provides that "the prisoner is not to be held accountable for activities committed by associates over which the prisoner has no control and could not have been reasonably expected to foresee." The

majority reasons that, because Farese claims that he had no contact with the other spokes in the Feola wheel, he had no "control" over his co-defendants and "could not have been reasonably expected to foresee" their activities. Thus, the majority concludes, Farese should not have been held accountable for the activities of the other members of the Feola conspiracy.

It is important to note that the exception to the rule of accountability for co-conspirators' activities is applicable only if both conditions are met—the lack of control *and* the lack of reasonable foreseeability. I agree with the majority that there is no basis in this record from which the Commission could have found control by Farese of the other drug distributors. On the other hand, I disagree with the majority's premise that Farese could not have foreseen the sale of more than 2.5 kilograms of cocaine. This is not an instance in which the very existence of additional co-conspirators would be unforeseeable to the prisoner. Nor is this a case in which the actions of the prisoner's co-conspirators are unforeseeable, as they arguably would be if a co-conspirator in a drug ring had unilaterally robbed a bank as a means of financing his share of a drug conspiracy. This instead is a case in which both the existence of additional co-conspirators (other street dealers working for Feola) and their activities (the sale of cocaine) must have been obvious to Farese.

The majority acknowledges that the PSI report states that an undercover officer purchased 226 grams of cocaine from one of Farese's *co-defendants* at Farese's home.[1] The majority concludes that

---

4. It is noteworthy that Hearing Examiner Newman observed that one of Farese's "equally culpable cohort[s]" had been ranked as a category six by the Commission. While the Commission must obtain and consider the parole status of co-defendants, United States Parole Rules and Procedures Manual § 3.12–07 (1989), it is not required to give co-defendants the same offense severity rating. *Id.* § 2.20–09. However, in order to arrive at an offense category rating of six, the Commission had to "carve out" Farese's co-conspirator's individual role in the conspiracy, something it refused to do for Farese.

5. In light of our decision, we need not reach the additional issue raised by the petitioner relating to the alleged deficiency in the Commission's notices of action.

1. The majority seems to imply that the government's allegations in this regard are open to question. 953 F.2d at 53. However, there is no indication in the record that Farese challenged any of the factual assertions made in the PSI report, as he was entitled to after being given an opportunity to review the report prior to sentencing. Thus, we may "assume that the factual information in the report was correct." *United*

Farese's knowledge of this one sale can, at most, increase the amount of cocaine for which Farese can be held accountable by 226 grams. I interpret this fact differently. I think that it clearly demonstrates that Farese knew that he was not Feola's exclusive distributor and that the cocaine conspiracy in which he was involved extended beyond himself and Feola.

Although Farese sought to minimize his participation in the drug distribution scheme to the sale of a "few ounces" of cocaine "here and there," we cannot overlook that Farese was not a mere user but a seller. Under the majority's acceptance of Farese's version, we would have to conclude that Farese believed that a three level drug hierarchy (Feola to Farese to ultimate users) existed simply to distribute a few ounces "here and there." I believe that is not a reasonable inference, and thus I disagree that Farese "could not have been *reasonably* expected to foresee" the existence of other street dealers acting off of Feola as he did. Indeed, it would have been unreasonable for Farese to expect that Feola set up his distribution scheme just for him and no one else.

The majority overlooks one significant aspect of the evidence that was before the Commission—Farese's guilty plea to count 1 of the information. The information did not charge a mere two person conspiracy between Farese and Feola. On the contrary, it charged a wide ranging conspiracy. As noted in the PSI report,

> Count 1 charges that from on or about January 1, 1985, up to and including November 26, 1985, in the Southern District of New York, JOHN FARESE together with GARY FEOLA, EDMUND ROSNER, NOEMI FERNANDEZ, RUBIEL MARIN a/k/a "Rubio," JAIME ARANGO a/k/a "Jimmy," IRA NEURINGER, LOUIS TARANTELLI, JOHN CERCENA, STEPHEN GALLO, ARTHUR TORSONE, a/k/a "Allen," DANIEL WALL, SOLOMON GUMPRICHT, GEORGE ACEVEDO, a/k/a "George Pallares,"

ROBERT MARRAMA a/k/a "Bo," DOUG MacLENNAN a/k/a "Dog," RICHARD SULLIVAN, MARK DRATCH, ARTHUR McGUIRE, and others known and unknown to the United States Attorney, unlawfully, intentionally and knowingly, combined, conspired, confederated and agreed together and with each other to violate Sections 812, 841(a)(1), and 841(b)(1)(A) of Title 21, United States Code.

App. at 55.

I conclude from the record before us that there is a rational basis for the Commission's decision in this case. It is the role of the Commission, not this court, to evaluate the factual record and interpret its own regulations in the first instance. While we may set aside a decision where there is no rational basis in the record to support the Commission's conclusions, we may not substitute our judgment for that of the Commission. *See Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976). We are construing a Commission regulation, and we will uphold the "agency's interpretation of its own regulations ... absent compelling indications that it is wrong." *DiNapoli v. United States Parole Comm'n,* 538 F.Supp. 658, 667 (M.D.Pa.1982) (citing *Lucas Coal Co. v. Mine Operations Appeals,* 522 F.2d 581 (3d Cir.1975)).

The majority rather cavalierly dismisses this court's precedent in *Campbell v. United States Parole Commission,* 704 F.2d 106 (3d Cir.1983). In *Campbell,* Judge Rosenn dissented in part because the Parole Commission held Campbell responsible for a murder for which he was never charged or prosecuted. Here, on the other hand, Farese was charged with participation in the multi-player conspiracy and had an opportunity to protest his non-involvement had he chosen to stand trial, when the government would have put on its proof. I see no reason why Farese should be in a better position than Campbell because he pleaded guilty to the conspiracy charge of

*States ex rel. Goldberg v. Warden,* 622 F.2d 60, 66 (3d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 210, 66 L.Ed.2d 91 (1980).

the information, and thereby bypassed the proof stage.

Admittedly, the Commission may not have set forth how it reached its decision as fully as we would like. *See Marshall v. Lansing,* 839 F.2d 933, 942–43 (3d Cir.1988) (Commission is statutorily required to state with particularity reasons for a parole denial). However, the majority does not merely vacate the district court's order and remand the case to the Commission to provide a statement of the factual predicate and legal basis for concluding that Farese should be held responsible for all the drugs sold by the other members of the Feola conspiracy. Had it so concluded, I could have joined. Because the majority goes further than that and remands with instructions to reduce Farese's offense severity rating to 6, I respectfully dissent from its decision.

It is important to note that the majority's opinion is of limited applicability. Farese pleaded guilty to crimes committed prior to November 1, 1987. Thus, the United States Sentencing Guidelines, issued pursuant to 28 U.S.C. § 994 (1988), are not applicable to this case. *See United States v. Sussman,* 900 F.2d 22 (3d Cir.1990). Under the Sentencing Guidelines, in determining the guideline range for a defendant convicted of a conspiracy involving a controlled substance the sentencing court shall consider all "relevant conduct." U.S.S.G. § 2D1.4, note 1 (1991). "Relevant conduct" includes

> all acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would be otherwise accountable,* that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

U.S.S.G. § 1B1.3(a)(1) (emphasis added). The Application Notes explain that "[i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise

accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." *Id.,* note 1.

We have held that, pursuant to this guideline, one convicted in a drug distribution conspiracy is accountable for the drugs sold by his confederates in furtherance of that conspiracy. *See United States v. Salmon,* 944 F.2d 1106, 1127 (3d Cir.1991). Several other circuits have also reached this conclusion. *See, e.g., United States v. Cardenas,* 917 F.2d 683, 687 (2d Cir.1990); *United States v. Reid,* 911 F.2d 1456, 1462–63 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991); *United States v. Drew,* 894 F.2d 965, 973 (8th Cir.), *cert. denied,* 494 U.S. 1089, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990); *United States v. Vinson,* 886 F.2d 740 (4th Cir.1989), *cert. denied,* 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). Thus, although the majority holds that under the prior system Farese is not to be held responsible for the cocaine sold by the other members of the Feola conspiracy, it must be stressed that this decision does not reflect the status of the current law.